DICK WILKINS, Respondent, v. NATIONAL UNION FIRE IN-
    SURANCE COMPANY, OF PITTSBURG, PA., a corporation,
    Appellant.

(189 N. W. 317)

**Jury — jurors who sat in other similar cases involving same facts, and who
stated that their decision would be the same upon the same facts, held
subject to challenge for cause.**

1. Where most of the jurors called for the trial of a case had sat in from one to six similar cases brought by different policy holders against the same insurance company, and tried at the same term, in which the complaints were practically identical and the answers substantially the same, and the witnesses for the plaintiffs were generally the same, with the exception of the plaintiff in each case, and the witnesses for the defendant, were practically identical in all of the cases; and where such jurors stated upon their voir dire that they had made up their minds upon the conflicting questions of fact submitted in the previous cases, and that if the facts were the same, in the case upon trial, their decisions would necessarily be the same; that it would require additional evidence on the part of the defendant to over-come their opinions on such facts; that if the evidence was the same they would come to the same conclusion; that their minds were fixed and made up after hearing the evidence in the other cases, *Held*, that the defendant's challenge for cause should have been allowed under subd. 6, sec. 7616, Comp. Laws, 1913, providing that "Having an unqualified opinion or belief as to the merits of the action founded upon knowledge of its material facts or some of them," is ground of challenge for cause even tho the jurors stated, when interrogated by the Court, that they could try the case fairly and impartially on the evidence, and declared themselves to be free from bias or prejudice.

**Accord and satisfaction — instruction as to accord held erroneous.**

2. An instruction that if the jury believe an agreement of accord had been entered into whereby defendant had agreed to repay to plaintiff his premium, and an additional amount in case other policy holders received more than a repayment of their premium, plaintiff, before the accord was completely executed, might repudiate it, and sue upon the original obligation without rescinding the accord, was erroneous, it appearing that there was no issue raised by the pleadings as to any agreement by defendant to pay plaintiff any such additional amount, and that all testimony with reference thereto had been erroneously admitted over defendant's objection.

**Accord and satisfaction — there may be accord of liquidated or disputed or unliquidated demand.**

3. Under Sec. 5825, Comp. Laws, 1913, providing that an accord is an agreement to accept in extinction of an obligation something different from or less than that to which the person agreeing to accept is entitled, there may be an accord of either a liquidated or a disputed unliquidated demand.

**Evidence — testimony as to conversation in defendant's absence with defendant's former agent held inadmissible as hearsay; testimony as to conversation with defendant's adjuster inadmissible, unless shown to be within scope of his authority; testimony as to conversation concerning other claims subsequent to alleged settlement held inadmissible.**

4. Certain testimony held to have been erroneously admitted.

**Witnesses — called to testify in number of cases at same term entitled to re-**

ceive fee in particular case only for number of days actually in attendance before court for purpose of testifying in such case.

5. Under Sec. 3535, Comp. Laws, 1913, providing that witnesses are entitled to receive for each day's attendance before the District Court the sum of two dollars, a witness called to testify in a number of cases at the same term is entitled to receive in a particular case the statutory fee for only the number of days he was actually in attendance before the court for the purpose of testifying in that case.

Witnesses — from outside state entitled to mileage for distance actually travelled within the state.

6. Under Sec. 3535, Comp. Laws, 1913, providing that witnesses are entitled to receive for each mile actually travelled one way ten cents, witness coming from without the state is entitled to receive the statutory sum for the number of miles actually travelled within the state.

Witnesses — counsel for one of parties not entitled to witness fees, though called as witness.

7. An attorney appearing in a case before the Court as counsel for one of the parties, even tho he is called as a witness in said cause, is not entitled to witness fees.

Witnesses — plaintiff in one action where called as witness in other similar actions is entitled to witness fees.

8. A person called as a witness who is plaintiff in another similar action and is present in court awaiting trial of said action is entitled to witness fees for his actual attendance in court on account of the case in which he testifies, the same as any other witness.


Opinion filed March 21, 1922.    Rehearing denied July 14, 1922


From a judgment of the District court of Morton county, *Lembke, J.,* defendant appeals.

Reversed and a new trial ordered.

*Barnett & Richardson,* for appellant.

Competency of jurors where the same question of fact is involved, and where one of the parties is the same in both cases.

In Spear v. Spencer, 1 G. Greene 534, it appeared that jurors who had rendered a verdict on an indictment were held incompetent to sit in an action of trespass against the same defendants, involving the same question in relation to the same subject matter, although they declared upon their voir dire that they had not formed or expressed an opinion.

In Stephens v. State, 53 N. J. L. 245, 21, Atl. 1038, on a prosecution

for embezzlement it was held to be good ground for challenge that a juror called in the case had sat in a previous trial of the defendant for one of the same series of embezzlements. See also Apperson v. Logwood, 12 Heisk (Tenn.) 262; Mo. P. Ry. Co., v. Smith, 60 Ark. 221, 29 S. W. 752; Baker v. Harris, 60 N. C. 277, involved an action for fraudulently removing a debtor, thereby damaging a creditor; and it was held that a juror who had sat in the case of another creditor against the same defendant for the same act of removal was subject to challenge. See also Garthwaite v. Tatum, 21 Ark. 335, 76 Am. Dec. 402; Swarnes v. Sitton, 58 Ill. 155.

Competency of jurors where the same question of fact is involved in both cases, and where both parties are different. People v. Mol, 137 Mich. 692; 100 N. W. 913, is the leading case on this subject.

In the last case cited Mol had been convicted of the charge of having corruptly accepted $300 to vote, as an alderman, in favor of the city entering into a certain contract. Six of the men who sat as jurors on his trial had only a few days before assented to a verdict of guilty on the case of one Ellen. Mol exhausted his preemptory challenges, challenged these six jurors for cause and the trial court overruled the challenge. The Supreme Court held these six jurors were subject to challenge for cause. See Stevens v. People, 38 Mich. 739, Smith v. Eames, 4 Ill. 76, 36 Am. Dec. 515; People v. Troy, 96 Mich. 530, 56 N. W. 102.

"Due process of law" implies and requires trial by an impartial jury.

In Cancemi v. the People, 16 N. Y. 501, a juror upon the trial of an indictment, being challenged for principal cause, testified on his direct examination that he had formed an opinion and had expressed it; and, on his cross examination that he had no fixed opinion, which could not be removed by the evidence. Held, that the juror was disqualified. See also Olive v. State, 11 Neb. 1, 7 N. W. 444; Curry v. The State, 4 Neb. 545; Carroll v. The State, 5 Neb. 31; People v. Bock, 96, N. Y. 188; Hayes v. Missouri, 120 U. S. 68; Reynolds v. U. S., 98 U. S. 145.

*Nuchols & Kelsch,* and *Jacobsen & Murray,* for respondents.

COOLEY, District Judge. This is an appeal from a judgment in favor of the plaintiff. The action is upon a policy of insurance in which the defendant undertook to insure the plaintiff "against loss or damage to crops, and against failure of crops from hail, or any other cause, except fire, floods, and winter-kill, to the amount of $1,617.00" during the year

1917. The complaint alleges the making of the contract to the effect above stated, the plaintiff's ownership and the value of the crops per acre; that the plaintiff had sustained loss and damage within the risk assumed by the defendant; that he had fulfilled the conditions of the policy on his part; that the value of the crops harvested, computed according to the terms of the policy, was $804, and that the loss and damage by reason of hail, drought, and hot winds, computed according to the terms of the policy, was $813, proof of which loss was duly furnished to the defendant; that thereafter the defendant sent an adjuster, who adjusted plaintiff's loss at $813; that he falsely and fraudulently represented to the plaintiff that the defendant company was bankrupt and unable to pay more than the amount of premium previously paid by the plaintiff, $161.70, and further represented that this was all the company was paying to any of its policy holders, but that if the company could not make settlement with all of its policy holders on this basis it would go through bankruptcy and the premiums would be consumed as expenses; that, believing and relying upon the representations so made by defendant's adjuster, the plaintiff signed the release, releasing the company from liability; that the adjuster falsely represented the release to be merely a receipt for the repayment of the $161.70 premium; that the representations were false in fact, and known by the adjuster to be false; that the company was not in hard financial straits or bankrupt, but, on the contrary, was able to pay all losses, including plaintiff's; that, in fact, all the policy holders did not accept a return of their premium or settle on that basis; that the paper which the defendant induced the plaintiff to sign, and which was represented as a receipt for the return of the premium, was an adjustment adjusting plaintiff's loss in the sum of $161.70 and releasing the defendant from further liability; that most of the policy holders of the defendant received 100 per cent. of their loss.

The answer admits the insurance contract; admits the payment of $161.70 to the plaintiff; admits that it was not bankrupt, and that certain of its policy holders did not accept a return of their premiums in settlement; and alleges that the papers signed by the plaintiff evidence the adjustment and settlement of his loss, and a release of the defendant from further liability.

As an affirmative defense it is alleged that the plaintiff represented at the time of the application that his crops were all a good stand and in good condition, and had not been damaged prior thereto; that it was agreed that if the statements regarding the condition of the crop were

untrue the policy, at the election of the defendants, should become null and void. Breach of this condition is alleged, in that the plaintiff's crops were materially, seriously, and noticeably injured by drought and other causes, and were not of a good stand when the application was made; that upon learning these facts later, defendant denied liability, but offered to return the premium, which offer was accepted. The defendant further relies upon certain provisions of the policy which declared it to be void on account of alleged misrepresentations, fraud, concealment, or false swearing, and on account of willful misrepresentations in the application. It also pleads the settlement on the basis of the payment of $161.70, as an adjustment of the plaintiff's disputed and unliquidated claim.

At the term of court in which this action was tried there were 40 actions of similar character upon the calendar, each one brought by a different policy holder against the same defendant. The complaints in all were practically identical and the answers substantially the same. The witnesses called by the plaintiff to establish their case were generally the same, with the exception of the plaintiff himself in each case, and the witnesses for the defendant were practically identical in all of the cases. Thirty-one of the cases were tried; and of the 31 cases, 26 were tried before jurors, one or more of whom had sat in the trial of some of the other cases of similar character. The defendant challenged such jurors for cause, and objected to their sitting. The trial court overruled the objections and challenges, and such ruling constitutes one of the principal assignments of error on this appeal. Other facts necessary to be noticed will be stated at an appropriate place in the opinion.

The defendant objected to certain items of cost taxed by the plaintiff in each case, and the clerk, upon retaxation, sustained some of the defendant's objections. The district court declined to make further changes. This matter is likewise here for review, and the facts concerning the costs will be stated at the end of the opinion.

The examination of the jurors upon their voir dire is in the record, and it may be briefly stated as follows: Jurors were called who had sat in from one to as many as 6 of the previous similar cases tried at the same term. They stated that they had made up their minds upon the conflicting questions of fact submitted in the previous cases, and that if the facts were the same in the case upon trial, their decision would necessarily be the same; that it would require additional evidence on the part of the defendant to overcome their opinions on such facts; that if

the evidence were the same they would come to the same conclusion; that their minds were fixed and made up after hearing the evidence in the other cases. One juror said there was no way he knew of that the defendant could win this lawsuit. Notwithstanding this examination, by way of foundation for challenges, however, the jurors generally testified in response to questions from the court that if they were selected, they could act fairly as to both parties, and try the case fairly and impartially on the evidence. They also declared themselves to be free from bias or prejudice, whereupon the challenges in each instance were overruled.

It is contended that prejudicial error was committed in overruling the challenges made under the general circumstances stated above. It is said that where the evidence adduced on the voir dire shows that the condition of a juror's mind is not open, and that he is in fact prejudiced, at least hypothetically, as to the issues of fact in the case, an absolute disqualification arises, notwithstanding his declaration of absence of bias and willingness and ability to try the case fairly and impartially on the evidence. We are of the opinion that the jurors who had sat in the previous cases were disqualified. Section 7616 of the Compiled Laws of North Dakota for the year 1913 recognizes as grounds of challenge for cause the fact that a juror has been a witness or juror on a previous trial between the same parties for the same cause of action; also that he has an unqualified opinion or belief as to the merits of the action founded upon knowledge of its material facts or some of them.

It is argued by respondent that the grounds for challenge enumerated in the section above cited are exclusive, and that, inasmuch as the parties are not the same in this action as in the previous trials in which some of these jurors had participated and the cause of action not the same, they are not disqualified. This portion of the statute (¶ 4) renders a juror incompetent on the substantial ground that he has previously been compelled to form an opinion on the facts in dispute, as would necessarily be the case if the parties and cause of action were the same. But this is not all of the statute. It likewise renders incompetent one who may have an unqualified opinion or belief as to the merits founded upon a knowledge of some of the material facts. Paragraph 6. This statute does not concern itself with the source of the juror's knowledge, but we think it clearly implies that a knowledge gained from any reliable source which has been crystalized into an unqualified opinion or belief as to the merits of the case disqualifies a juror. Did the jurors have such knowledge of material facts in the instant case as would lead them to an un-

qualified opinion or belief as to the merits? They said on their voir dire that if the evidence were the same as in previous cases, their verdict would necessarily be the same. This means, and can only mean, that they would come to the same conclusion on disputed facts where the same evidence would·be adduced to prove them. In this way the defendant's case was at least partially prejudged, as a reference to the issues and the record will readily disclose.

It was contended by the defendant that the crops were not in the condition represented at the time the application was taken. To prove this, it relied chiefly upon the testimony of one Roberts, of the United States Weather Bureau, and of some farmers in the neighborhood. This testimony, being general in character, would necessarily be substantially the same in t he various cases. Again, the facts with reference to the representation that were authorized to be made in securing settlements under the various policies are extracted from conferences that were had between certain representatives of the defendant and other persons whose interests were not the same. The testimony concerning the negotiations at these conferences was not harmonious, but was sharply conflicting. A juror adopting the defendant's version of the facts transpiring at these conferences might well adopt the defendant's view of all the facts and arrive at a verdict in its favor. On the other hand, if the juror had adopted the plaintiff's version, he would be likely to accept his views as to the remaining facts. Such facts as those referred to here are identical in the various cases, and are provable by the same witnesses. Basically the issues in these cases turn upon questions of credibility, and the facts are so similar in all of the cases that no juror could determine one of them without passing upon the credibility of most of the witnesses for the defendant. Thus a juror who had previously gained sufficient knowledge of the material facts to form an unqualified opinion or belief as to the merits of a previous action, which depended in a measure upon the same facts as those about to be presented, is disqualified within ¶ 6 of § 7616 of the Compiled Laws. It must be assumed that his knowledge of material facts would operate upon his mind to the same effect in all cases in which those facts were material. It is the clear purpose of the statute to insure against a suitor's having to overcome an obstacle of this sort in submitting his case to a jury. The current of authority, independent of statute, seems to be to. like effect. See note 68 L. R. A. 673. It follows from what has been said that a new trial must be had.

In view of the new trial we deem it proper to discuss questions presented by other assignments which are likely to arise upon the new trial. It is not alleged in the complaint in this action that it was agreed between the plaintiff and the defendant's adjuster that if the defendant company paid more to other policy holders than a return of their premium he also would receive more. The court, however, permitted testimony to go in over objection of the defendant to prove such an agreement. This testimony was not within the issues, and the objections were sufficiently specific; hence it should have been excluded.

For the same reasons certain testimony as to the amount paid to other policy holders upon settlement of their claims should have been excluded.

The trial court also instructed the jury to the effect that if they believed an agreement of accord had been entered into whereby the defendant had undertaken to repay to the plaintiff his premium, and an additional amount in case other policy holders received more than a repayment of their premium, the plaintiff, before the accord was completely executed, might repudiate it, and sue upon the original obligation for any balance owing him, without rescinding the original accord. This instruction is likewise not within the issues by reason of the absence of allegations in the complaint of such an accord. In Lehde ·v. National Union Fire Insurance Co. (N. D.) 180 N. W. 56, where the complaint was similar to that in the instant case, it seems that the evidence concerning the additional agreement to pay more than the premium in settlement of the disputed liability went in without objection—in fact the defendant and appellant largely relied upon this evidence as the basis for the errors assigned upon appeal, and for purpose of that appeal it was considered as properly in the case. Owing to the character of the complaint in this action, we would be content to point out the error in the reception of evidence and the instruction of the court relating to accord and satisfaction, were it not for the fact that a number of appeals are contingent upon the decision in this case, in all of which the pleadings and record may not be the same in this respect as in the instant case. Furthermore, counsel for the respondents have specifically asked a reconsideration of the principle applied in the case of Lehde v. National Union Fire Insurance Co., supra, with reference to accord and satisfaction. In view of this situation it is perhaps well to set the matter at rest.

Counsel argued that, inasmuch as the defendant was contesting the right of the plaintiff to recover anything by reason of the alleged mis-

representation as to the condition of the crop at the time the application was taken, there is nothing upon which an accord could operate. They say if their position were established, the plaintiff had "nothing coming whatsoever." We quote from the brief:

"With this sort of a situation in mind, the parties meet, and the plaintiff agrees to accept a certain sum in settlement, and as much more as others, similarly situated, might thereafter receive. No legal basis exists for the court or counsel to state that under such a settlement the plaintiff was agreeing to settle for less than he was entitled to receive. Under the defendant's contention he was getting 100 per cent. more than he should have received. There is therefore no legal basis whatsoever in the proof for any claim for an unexecuted accord or satisfaction."

The error in this contention lies in the assumption that it is impossible to have an accord and satisfaction of a disputed or unliquidated demand. Such is not the law. On the contrary, unliquidated demands form a peculiarly appropriate subject-matter for accord and satisfaction.

"A claim for damages arising from the commission of a tort being generally of an unliquidated nature and almost invariably disputed, not only as to amount, but also as to liability in fact, forms an ideal subject-matter for an accord and satisfaction, and that such a claim may be compromised and settled by an accord and satisfaction seems to be universally admitted." 1 R. C. L. 179

Under our statute, therefore, § 5825, Compiled Laws of 1913, there may be an accord of either a liquidated or a disputed unliquidated demand. Section 5826, Compiled Laws of 1913, states that the parties to an accord are bound to execute it, but it expressly provides that an unexecuted accord does not extinguish the obligation. Since the principal obligation is neither released nor suspended by the executory accord, an action may be maintained upon it subject to whatever defense or counterclaim the defendant may have.

Certain testimony of the plaintiff was received concerning a conversation had in the absence of the defendant between him and one who had been, but was at the time of the conversation no longer, an agent of the defendant company, regarding the false representations alleged to have been made in procuring the settlement. The admission of this testimony over defendant's objection was error. Whatever plaintiff said was merely self-serving, and whatever the other party to the conversation said could not have been binding upon the defendant.

The testimony of the witness Peterson with reference to a conver-

sation had between him and the defendant's adjuster, regarding what took place at a conference between the witness, such adjuster, and officer of the company, and others, concerning the claims in suit, was also erroneously admitted. It was not in any way binding upon the defendant, for the reason that any admissions the adjuster might have made at the time of the conversation were not shown to have been within the scope of his authority.

Testimony of a witness for plaintiff was also admitted concerning a conversation had between the witness and representatives of the defendant company long subsequent to the settlement of the claims in suit respecting the future action of the company in procuring the settlement of entirely different and distinct policy claims, in no way connected with the claims in suit. This testimony was immaterial and irrelevant, having no bearing whatever upon the legal rights of either party. The defendants objection should have been sustained, and the admission of such testimony was highly prejudicial to the defendant.

Upon the question of costs little need be said. The plaintiff adhered to a cumulative principle. To illustrate: The witness Nason was a material witness for the plaintiff in each of a number of cases. In each case the attendance item embraced the date of trial for that particular case and the number of days he had been present previous to that time awaiting the trial. Approximately 43 days were consumed in the trial of these drought insurance cases, and during this time Nason testified in various cases at the rate of approximately a case per day. Under the cumulative principle sought to be applied by the plaintiff in taxing costs this witness' attendance during the 43 days aggregated 500 days. Under the statute, § 3535, witnesses are entitled to a per diem stipend for each day's attendance before the district court. They are entitled to the statutory fee for each day they are actually in attendance before the court for the purpose of testifying in a particular case; not for a purely fictitious attendance. Attendance is not governed by the number of cases pending in which the particular person may be required as a witness. We express no opinion as to the right to tax attendance in each of two or more cases where the witness may testify in all on the same day.

It is claimed the mileage fees cannot be taxed for mileage of witnesses called from outside the judicial district. Our attention has not been called to any statute that restricts the right to tax as costs the mileage a witness has necessarily traveled within the state, and § 3535, Compiled Laws of 1913, which authorizes mlieage to be taxed, does not take into ac-

count the boundaries of judicial districts; hence actual mileage within the state may be taxed.

Items taxing witness fees for attorneys who otherwise appeared in the cases are objected to.   We think these objections were properly sustained. Attorneys otherwise in attendance should not claim witness fees and thus enhance the costs of litigation.

Another objection relates to costs taxed on account of attendance of persons as witnesses who were plaintiffs, in other actions of similar character, and who were present in court awaiting the cases in which they were interested respectively.   Any such witness is clearly entitled to witness fees for his actual attendance on account of the case in which he testifies the same as any other witness, but no more, and no fees for the time he is in attendance as a party.

Judgment reversed, and cause remanded for a new trial.   The appellant will recover costs.

BIRDZELL, ROBINSON, and CHRISTIANSON, JJ., and COFFEY, District Judge, concur.

GRACE, C. J., and BRONSON, J., disqualified,   did not   participate; COOLEY and COFFEY, District Judges, sitting in their stead.