Victor **RICHTER** and Albert Meyer, Plaintiffs and Appellants

v.

Kent **JONES**, Commissioner of the North Dakota Department of Agriculture, and Nicholas J. Spaeth, Attorney General of the State of North Dakota, Defendants and Appellees.

Civ. No. 10911.

Supreme Court of North Dakota.

Nov. 21, 1985.

---

Rausch & Rausch, Bismarck, for plaintiffs and appellants; argued by James P. Rausch.

Allen C. Hoberg, Asst. Atty. Gen., Bismarck, for defendants and appellees.

LEVINE, Justice.

Victor Richter and Albert Meyer appeal from a district court judgment dismissing their complaint for a declaratory judgment that a statute and rule regulating the beekeeping industry are unconstitutional. We affirm.

Richter and Meyer raise, inter alia, the following issues: (1) Whether the trial court erred in concluding that § 4–12.2–10, N.D.C.C., and Rule 7–02–02–06, N.D.A.C., are constitutional; (2) Whether the trial court erred in allowing disbursements for the actual travel expenses of two defense witnesses; and (3) Whether the trial court erred in determining that the beekeeping laws are uniformly applied.

### 1. Constitutionality

Richter and Meyer contend that § 4–12.-2–10, N.D.C.C.,[1] unconstitutionally discriminates against property owners who do not own and manage bees by imposing restrictions on crop pollination that are not applicable to property owners who own and manage bees. They contend that Rule 7–02–02–06, N.D.A.C.,[2] unconstitutionally discriminates against property owners who do not own and manage bees, by allowing only certain crops to be pollinated by commercially maintained honeybees only at restricted times and, in the case of alfalfa, only if the alfalfa is raised for certified seed production, while property owners who own and manage bees are not so re-

---

1. *"4–12.2–10. Establishment of pollination locations.* When a person requests the commissioner to allow additional locations for the purpose of pollinating that person's crop, the commissioner may waive the two-mile [3.22–kilometer] radius restriction if all of the following conditions are met:

   1. The applicant owns, leases, or rents the land on which the pollination location is to be located and uses the land for the purpose of growing a commercial seed, fruit, or other crop which depends on bees for pollination. The commissioner shall adopt rules defining those crops for which a location may be allowed for pollination and where necessary shall prescribe time limits for the placement of bees at pollination locations.

   \*   \*   \*   \*   \*   \*

   "Property owners who produce a commercial seed, fruit, or other crop and own and person- ally manage bees maintained on their property are not subject to this section."

2. *"7–02–02–06. Crops pollinated.* Pollination locations may be allowed only on the following crops:

   1. Leguminosae. Placement of bees is limited to five days prior to onset of blossoming and bees are to be removed five days after ninety-five percent of flowers have wilted or five days after harvest, as determined by the department of agriculture.

   Alfalfa—*Medicago sativa* L. For certified seed production only...."

   The rule also provides time restrictions upon the placement of bees for the pollination of other crops. Pollination locations may be established for some other crops only for seed production, but for none of the other crops listed does the rule distinguish between certified and other classes of seed.

stricted. They seek to have property owners who do not own and manage bees placed "in the same position as a property owner who actually owns and manages his own bees ... free of all intrusions and regulations." Their arguments with regard to both the statute and the rule are grounded on the disparate treatment of property owners who own and manage bees and property owners who do not.[3] We will, therefore, treat the statute and the rule together.

■ Section 4–12.2–09(1), N.D.C.C., provides a two-mile radius restriction between commercial apiaries, with exceptions provided by §§ 4–12.2–10 and 4–12.2–11, N.D.C.C.[4] The constitutionality of a predecessor two-mile radius restriction was upheld in *State v. Knoefler*, 279 N.W.2d 658 (N.D. 1979), where we stated that "[a]n exception per se is not grounds for declaring a statute invalid or unconstitutional. Merely because there are exceptions to the two-mile spacing requirement does not make the section unconstitutional." 279 N.W.2d at 664. We then held, 279 N.W.2d at 665:

"We conclude that any classification created by § 4–12–03.1, NDCC, is based upon commercial activity and as such need only bear a rational relationship to the purpose of the statute. The spacing requirements of § 4–12–03.1 are rationally related to statutory goals of preventing honey raiding and the spreading of bee diseases. On the basis of the challenge made and the facts presented in support of the challenge, the statute is valid."

Relying on *State v. Carpenter*, 301 N.W.2d 106 (N.D.1980), Richter and Meyer assert that the statute and rule at issue should be subjected to stricter scrutiny than the rational basis standard because:

"What we are basically dealing with is a situation involving wealth. The purchase of bees and equipment is an expensive proposition."

While wealth may be involved to some extent in one's decision to purchase bees, it is not apparent to us that the statute and rule at issue classify persons on the basis of wealth. We need not, however, decide this issue for there is no record evidence establishing that either Richter or Meyer fall within a class of persons with standing to raise this claim. Generally, a litigant may assert only his own constitutional rights or immunities or must present weighty countervailing policies to cause an exception to the general rule. *State v. Gamble Skogmo, Inc.*, 144 N.W.2d 749 (N.D.1966). No such policies have been presented and we will apply the rational basis standard of scrutiny.

A statute enjoys a conclusive presumption of constitutionality unless it is clearly shown that it contravenes the state or federal constitution. *Hall GMC, Inc. v. Crane Carrier Co.*, 332 N.W.2d 54, 61 (N.D.1983). Nor is classification prohibited by the state or federal constitution, so long as the classification:

"... is reasonable for the purpose of legislation, is based on proper and justifiable distinctions considering the purpose of the law, is not clearly arbitrary, and is not a subterfuge to shield one class or to burden another or to oppress unlawfully in its administration." Syllabus 7, *In re Estate of Jensen*, 162 N.W.2d 861 (N.D. 1968).

Furthermore it is settled that a classification may be discriminatory, yet not arbitrary nor violative of the Equal Protection Clause if any state of facts reasonably can be conceived that would sustain it. *State*

---

**3.** Richter and Meyer have not questioned the scope of Rule 7–02–02–06, N.D.A.C. We, therefore, need not determine if the rule's distinction between certified and other classes of alfalfa seed exceeds the scope of regulatory authority delegated by § 4–12.2–10, N.D.C.C.

**4.** "*4–12.2–11. Establishment of property owner locations.* The two-mile [3.22–kilometer] radius restriction does not apply to a property owner's apiary if:
   1. The property owner owns the bees and the equipment; and
   2. The property owner personally manages the bees and equipment.
"A property owner location may not be sold, leased, transferred, or rented to another person."

*v. Knoefler, supra.* Here, the record sustains the classification at issue.

By enacting the two-mile radius law, the legislature sought to prevent honey raiding and the spread of bee diseases. *State v. Knoefler, supra.* The record evidence indicates: (1) a very small percentage of bee yards in North Dakota are operated by landowners; (2) honeybees are not efficient pollinators of alfalfa, but leafcutter bees are; (3) bees will steal honey from another colony when there is no nectar in the field, such as before the crops blossom; (4) limiting or eliminating robbing is a factor in controlling bee disease; (5) increasing the distance between apiaries reduces the chance of transmitting disease; (6) there could be a greater bee disease problem if commercial operators could move freely to pollinate crops; (7) commercial beekeepers will provide pollination services "on short notice if the farmers are willing to pay a cash price"; and (8) removal of the two-mile radius requirement would effect the result that "hundreds of beekeepers from many states would very quickly attempt to locate in North Dakota."

The legislature could reasonably have determined that the small number of bees owned and managed by property owners in relation to the number of bees maintained by commercial beekeepers would have an insignificant impact on the evils sought to be addressed by the two-mile radius requirement. As we said in Syllabus 1, *Snyder's Drug Stores, Inc. v. North Dakota State Board of Pharmacy,* 219 N.W.2d 140 (N.D.1974):

"Neither the North Dakota Constitution nor the United States Constitution makes it a condition of preventive legislation that it should work a perfect cure. It is enough that the questioned Act had a manifest tendency to cure or at least make the evil less."

It is clear that the two-mile radius rule, even with the exception for property owners who own and manage bees, has a manifest tendency to lessen the evils of honey raiding and the spreading of bee diseases.

To decide as Richter and Meyer urge us to do would allow the exceptions to swallow the two-mile radius rule. To place property owners who do not own and manage bees and who desire to use the services of commercial beekeepers in the same position as property owners who own and manage bees would render the two-mile radius law nugatory. It would permit large numbers of commercial beekeepers with the consent of property owners to evade the two-mile radius restriction at their pleasure. Thus, treating the two groups of property owners differently is "rationally related to statutory goals of preventing honey raiding and the spreading of bee diseases." *Knoefler, supra,* 279 N.W.2d at 665. We are not persuaded that Richter and Meyer have clearly shown that the challenged statute or rule contravene the state or federal constitution.

2. Costs and Disbursements

The trial court allowed the defendants costs and disbursements in the amount of $1,336.04, including the actual air fare of two defense witnesses who traveled to North Dakota from other states to testify at trial. Richter and Meyer assert that those witnesses, whom the trial court determined did not testify as experts, should have received only their daily witness fees and travel compensation only for miles traveled within this State at the rate of twenty cents per mile.

Sections 28–26–06 and 31–01–16, N.D. C.C., provide:

"*28–26–06. Disbursements taxed in judgment.* In all actions and special proceedings, the clerk must tax as a part of the judgment in favor of the prevailing party his necessary disbursements as follows:

1. The legal fees of witnesses and of referees and other officers;

2. The necessary expenses of taking depositions and of procuring evidence necessarily used or obtained for use on the trial; ..."

"*31–01–16. Compensation and mileage and travel expense of witness—...*

A witness in a civil or criminal case is entitled to receive:

1. A sum of fifteen dollars for each day necessarily in attendance before the district or county court....

2. A sum for mileage and travel expense reimbursement equal to the reimbursement rates provided for state employees in sections 44–08–04 and 54–06–09...."

Section 54–06–09, N.D.C.C., provides the rates at which state employees (and thus witnesses, pursuant to § 31–01–16, N.D.C.C.), are paid for travel within and without the borders of this State. It specifically allows "when travel is by ... common carrier, including regularly scheduled flights by airlines, the amount actually and necessarily expended therefor...."

Reliance on *Wilkins v. National Union Fire Ins. Co.*, 48 N.D. 1295, 189 N.W. 317 (1922), for the proposition that compensation for out-of-state travel is not allowable, is misplaced. This Court in *Wilkins* stated, 189 N.W. at 321:

"It is claimed the mileage fees cannot be taxed for mileage of witnesses called from outside the judicial district. Our attention has not been called to any statute that restricts the right to tax as costs the mileage a witness has necessarily traveled within the state, and section 3535, Compiled Laws of 1913, which authorize mileage to be taxed, does not take into account the boundaries of judicial districts; hence actual mileage within the state may be taxed."

The allowance of disbursements under the statutes lies within the discretion of the trial court, which is in a better position to determine the reasonableness and necessity of the disbursements sought by the prevailing party, and the trial court's decision will be overturned only if an abuse of discretion is shown. *Keller v. Vermeer Mfg. Co.*, 360 N.W.2d 502 (N.D.1984). The statutes under consideration do not limit allowable disbursements for travel expense to travel within this State and no abuse of discretion has been shown.[5]

### 3. Uniform Application

Richter and Meyer contend that the trial court erred in determining that the beekeeping laws are uniformly applied. They have not, however, provided us with any citations to authority or persuasive reasoning upon which to conclude that the trial court erred.

Other matters raised are unnecessary to disposition of this appeal.

For the reasons stated, the judgment is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.

---

5. It is unclear whether or not § 32–23–10, N.D.C.C., providing that "the trial court may make such award of costs as may seem equitable and just," applies to disbursements for travel expenses. The parties have not briefed the matter and we need not consider it.