FRANK ROKUSEK, Respondent, v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, PENNSYLVANIA, a Corporation, Appellant.

(195 N. W. 300.)

**Accord and satisfaction — final loss adjustment under crop insurance policy and payment of draft held an accord and satisfaction.**

1. In an action to recover on a policy of crop insurance for loss sustained, held that under §§ 5825 to 5828, inclusive, Comp. Laws 1913, certain instruments set out and referred to in the opinion constitute a good accord and satisfaction of all obligations on account of such policy.

Note.—(1) Acceptance or remittance of part of unliquidated or disputed claim accompanied with a statement that it is in full as assent to its receipt in full payment, see notes in 14 L.R.A.(N.S.) 443; 27 L.R.A.(N.S.) 439; 1 R. C. L. 196; 1 R. C. L. Supp. 60; 3 R. C. L. Supp. 10.

(2) Signing instrument in ignorance of contents, see 6 R. C. L. 624; 2 R. C. L. Supp. 168: 4 R. C. L. 430; 5 R. C. L. Supp. 359.

(3) Degree of certainty necessary to establish fraud in a civil action, see note

Accord and satisfaction — one signing instrument adjusting insurance loss without reading it concluded as against other party, in absence of fraud and deceit.

2. In the absence of mutual mistake, and unless induced so to do by fraud or deceit, one who deliberately signs a written contract without reading the same is concluded thereby as against the other party to such contract.

Accord and satisfaction — preponderance of evidence sufficient to establish fraud so as to avoid written instrument; evidence held insufficient to show written adjustment of crop insurance fraudulently procured.

3. A preponderance of the evidence, taking into consideration all presumptions arising under the circumstances as shown, is sufficient to establish fraud so as to avoid a written instrument. Evidence examined and held not to meet the requirement in this particular case.

Damages — action on crop insurance policy held not one for damages for fraud.

4. The pleadings and record in the instant case examined and held that the action is not an action for damages on account of fraud.

Contracts — to rescind for fraud party rescinding must place other party in statu quo.

5. In order to rescind a contract procured by fraud the party rescinding must restore or offer to restore to the other party the consideration moving from him on condition that such party shall do likewise, unless the latter is unable or positively refuses to do so.

Accord and satisfaction — creditor may repudiate partly executed oral accord and sue on original obligation for balance after crediting amounts paid thereon.

6. Where an oral accord is partly but not fully executed, the creditor may repudiate the same and sue upon the original obligation for any balance remaining, after crediting thereon such amounts as may have been paid upon the accord.

Appeal and error — Proper motion for directed verdict challenges sufficiency of evidence and raises law question reviewable without motion for new trial or judgment non obstante.

7. Under chapter 133, Laws 1921, a proper motion for a directed verdict

in 33 L.R.A.(N.S.) 836; 12 R. C. L. 438; 2 R. C. L. Supp. 1428; 5 R. C. L. Supp. 644.

(5) Duty to place other party in statu quo on rescission of contract, see note in 30 L.R.A. 44; 6 R. C. L. 940; 2 R. C. L. Supp. 249.

(6) General rule as to execution of accord, see 1 R. C. L. 199; 1 R. C. L. Supp. 62; 4 R. C. L. Supp. 11; 5 R. C. L. Supp. 7.

(7) On rule as to directed verdicts, see 2 R. C. L. 198.

challenges the sufficiency of the evidence and raises a question of law which may be reviewed upon appeal from the judgment without a motion for a new trial or for judgment notwithstanding the verdict.

Opinion filed July 2, 1923.    Rehearing denied September 21, 1923.

Accord and Satisfaction, 1 C. J. § 105 p. 570 n. 69; § 109 p. 572 n. 86; § 148 p. 582 n. 33.    Appeal and Error, 3 C. J. § 769 p. 875 n. 69; § 889 p. 980 n. 65. Contracts, 13 C. J. § 678 p. 619 n. 44.    Fraud, 27 C. J. § 129 p. 19 n. 45.

Appeal from the District Court of Hettinger County, *Lembke*, J.

Defendant, National Union Fire Insurance Company, appeals from the judgment.

Reversed.

*Sullivan, Hanley & Sullivan,* for appellant.

"It must be assumed that his knowledge of material facts would operate upon his mind to the same effect in all cases in which those facts were material."

"It is the clear purpose of the statute to insure against a suitor's having to overcome an obstacle of this sort in submitting his case to a jury."    Wilkins v. Nat. Union F. Ins. Co. (N. D.) 189 N. W. 317.

"Mutual mistake can be shown," but further holds "but in order that parol evidence may be admissible to show a mistake in a written instrument, the existence of such mistake must have been alleged in the pleadings."    17 Cyc. 703.

Upon the question of the necessity of definiteness in the contract, see the following authorities:    Lombard Invest. Co. v. Carter, 7 Wash. 4, 34 Pac. 209; Babcock v. Ormsby (S. D.) 148 N. W. 848; Murphy v. Hanna (N. D.) 164 N. W. 32; Schumway v. Kitzman (S. D.) 134 N. W. 325; Van Slyck v. Broadway Ins. Co. (Cal.) 47 Pac. 689.

"If the person cannot read the language in which the contract is written, it is as much his duty to procure some person to read and explain it to him before he signs it as it would be to read it before he signed it if he were able to do so, and his failure to obtain a reading and explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents."    9 Cyc. 288–390.

*Jacobsen & Murray,* for respondents.

The supreme court must assume where no exceptions were taken to the charge of the court, that the issues were fairly submitted to the jury upon instructions correctly stating the law of the case. Kennedy v. First State Bank (S. D.) 162 N. W. 152.

Insurance policies the amount due of which were no more certain than in the case at bar, have been held to be liquidated claims. Springfield F. & M. Ins. Co. v. Hull (Ohio) 37 N. E. 1116; see Manhatten Nat'l Ins. Co. v. Burke (Ohio) 70 N. E. 74.

"Acceptance of an amount to which a party is clearly entitled does not constitute an accord and satisfaction where there is no claim of facts showing an accord and satisfaction under Civ. Code, 1180, providing that part performance, when expressly accepted in writing, in satisfaction, extinguishes the obligation." Chrystal v. Gerlach (S. D.) 125 N. W. 633.

"A release may be subject to the occurrence of a condition precedent and the release cannot be pleaded in bar of the right until the happening of the event specified. Likewise, there are decisions sustaining conditions subsequent." See 34 Cyc. 1077.

"The record fails to disclose prejudicial error, it not appearing affirmatively that the defendant, at the time of the ruling, complained of, had exhausted his peremptory challenges allowed by statute. Though the court erred in its ruling of the voir dire of a juror, the defendant not having exhausted his peremptory challenges, passed peremptory to the panel, thereby accepting the jury while having it in his power to have removed the objectionable juror, he, by failing to remove him, waived the objection formerly interposed, and likewise the court's erroneous ruling therein, granting that the same was such." State v. Goetz, 21 N. D. 569; State v. Lesh, 27 N. D. 165.

"A challenge to a juror for cause must state specifically the particular ground or grounds upon which it is based. It is not sufficient for a party merely to object that a juror is disqualified or incompetent or that he challenges the juror for cause, without stating the particular grounds. If the challenge is on the grounds of bias, it must not only state the kind of bias, whether actual or implied, but also the particular ground of bias or cause which such bias is to be inferred." 24 Cyc. 336, ¶ 6; People v. Owens (Cal.) 56 Pac. 251; People v. Renfrew, 41 Cal. 37; Paige v. O'Neill, 12 Cal. 483; People v. Buckely,

49 Cal. 241; People v. Cotton, 49 Cal. 166; People v. Hardin, 37 Cal. 258; People v. Reynolds, 16 Cal. 128; Mitchell v. Swanwood Coal Co. 166 N. W. 391.

"It is not error to overrule a challenge to a jury where no grounds are specified as a basis for the challenge, and the court is not called upon to determine the qualifications of the juror, except as to the matter upon which his qualification is challenged. The error, if any, in the ruling, must be found in the facts disclosed, and the challenge must have its basis in the facts disclosed. All other grounds of challenge are waived, when a specific ground is selected, on which to base the challenge, and on appeal no ground will be considered, except that urged as a basis for excusing the juror, though other grounds may appear in the records upon which a challenge might have been well based. The error must be found in the ruling on the challenge in order to be reversible." Mitchell v. Swanwood Coal Co. 166 N. W. 391; State v. Wilson (Iowa) 99 N. W. 1060; Haggard v. Petterson (Iowa) 78 N. W. 53; Davis v. Anchor Mut. F. Ins. Co. (Iowa) 64 N. W. 687; Bonney v. Cocke (Iowa) 16 N. W. 139.

"The law has become firmly settled in this state that the qualifications of jurors are to be determined like other questions of fact, and the decision of the trial court if supported by substantial testimony, ordinarily will not be disturbed." State v. Roberts (Kan.) 147 Pac. 828.

"To establish the incompetency of a juror, it is not sufficient merely to show facts from which a bare inference of his incompetency might be drawn and if there is evidence, although conflicting, sufficient to support the finding of the trial court, an appellate court will not disturb it." 24 Cyc. 347, ¶ 3. People v. Chutnacut (Cal.) 75 Pac. 340, 16 N. D. 43; State v. Werner (N. D.) 112 N. W. 60; State v. Ekanger (N. D.) 80 N. W. 482; Mainville v. State (Wis.) 179 N. W. 764.

"If the defendant had no defense on the merits, then his rights were not affected by any of the matters alleged as error." Cohn v. Wyngarden (N. D.) 184 N. W. 575.

The accepting of proof of loss and participating in the adjustment, constituted a waiver of all defenses. 26 C. J. 335.

"Where an insurer's liability for loss on household goods and merchandise was clear, and the amount thereof was beyond controversy,

and it was paid without more, there was an entire want of a legal consideration for the relinquishment of the loss on the building." Edwards v. Svea F. & L. Ins. Co. (Minn.) 170 N. W. 206.

NUESSLE, J.   This is an action to recover on account of a policy of insurance against crop failure. In his complaint, the plaintiff sets out the execution of the policy; its receipt by him and the payment of the premium on the same; that a loss was incurred; the adjustment of such loss; that by reason of fraud and false representations on the part of the defendant, the plaintiff entered into an agreement of accord with the defendant; the payment by the defendant and the receipt of such payment by the plaintiff of a portion of the loss claimed; the signing of a purported adjustment in full by the plaintiff; that the same was procured to be signed by and through the fraud and false representations of the defendant; that the agreement of accord in fact entered into has not been satisfied; that the monies paid by the defendant and received by the plaintiff have been applied on account of the loss incurred and that the plaintiff claims to recover the balance remaining unpaid.

The defendant answering, admits the execution and delivery of the policy by it to the plaintiff and the receipt of the premium therefor; denies generally the other matters and things set out in the complaint. As affirmative defenses, the defendant pleads: that the policy was obtained through and by reason of fraud and misrepresentation on the part of the plaintiff; that on becoming advised of such fraud and misrepresentation, the defendant denied liability under said policy and tendered a return to the plaintiff of the premium paid thereon; that said offer was refused; that by reason of these facts, the policy became and was void and all remedies barred thereunder; that there was a difference and dispute between the plaintiff and the defendant as to defendant's liability on account of such policy; that the plaintiff and defendant entered into an agreement of accord in settlement and adjustment of the plaintiff's claim; that such accord was thereafter fully executed and satisfied; that in satisfaction of such accord, the plaintiff received the monies agreed to be paid thereunder; that more than three years has elapsed since such monies were so paid, but that plaintiff has kept and retained and has not repaid or tendered back the same notwithstanding the fact that he became aware of all the facts and

circumstances in connection with the transaction; that there was no fraud or false representations on the part of the defendant with reference to the making of the agreement of accord or the satisfaction of the same.

On the issues as thus made, the case was tried to a jury. At the close of the plaintiff's case, and again at the close of the whole case, the defendant moved for a directed verdict. In accordance with the statute, chapter 133, Laws 1921, no ruling was made upon such motions. The plaintiff had a verdict. Judgment was entered thereon. No motion for a new trial was made, nor was there any motion for judgment notwithstanding the verdict. The case is here on appeal from the judgment.

The record discloses that in June, 1917, the defendant company issued its policy of insurance against "crop failure" to the plaintiff. This policy covered certain crops owned by the plaintiff and growing upon lands in Hettinger county. The crops in question failed and the plaintiff, on the 21st of September, 1917, filed his proof of loss for $2,753.20. The policy was written by one Heinrich, the agent of the defendant company, at Burt, North Dakota. Mr. Heinrich was a banker. The plaintiff did his banking business with Heinrich, and, according to his own testimony, frequently consulted him about his business affairs. In December of 1917, one Zemke, the adjuster of the defendant company, was in the vicinity of Burt, adjusting losses for the company. He had various losses to adjust, the plaintiff's among others. The plaintiff testifies that he saw and talked with Zemke regarding the loss in question and that Zemke adjusted his loss in the full amount claimed, representing that the company was insolvent and that the most it would be able to pay was fifty cents on the dollar of the loss so adjusted; that it would pay such proportion of such loss; that the plaintiff was not satisfied and insisted upon the payment of the loss in full; that Zemke told him that if the company paid any other of its policy holders more than fifty per cent of his adjusted losses, that the plaintiff would get the same; that the plaintiff refused to assent to such an adjustment, but stated he desired to talk with Heinrich concerning the matter; that he went to see Heinrich at Burt; that the adjuster was not there; that Heinrich told him that the settlement papers were left there; that he signed some paper there, believing

50 N. D.—9.

that the same was an adjustment in full of his loss and a receipt for fifty per cent thereof to be paid in cash, and that he was bound thereby only in that manner and to that extent; that such paper so signed by him was Exhibit "A," in the words and figures as follows:

Final Loss Adjustment.

"Know all men by these presents: That a dispute having arisen between National Union Fire Insurance Company of Pittsburg, Pa., and myself, as to the amount (if any) due and owing me from said Insurance Company under the terms and provisions of its Policy No. 4335.

"This agreement witnesseth: That for the purpose of finally settling and terminating said dispute, I agree that the sole and total amount to which I am entitled under said policy has this day been compromised, adjusted, fixed and determined, by and between said Insurance Company and myself, to be in the sum of Thirteen Hundred Seventy Six & 60/100 Dollars ($1376.60), and I hereby waive and relinquish any further claim or claims against said Insurance Company and agree to surrender said policy to said Insurance Company upon payment of said amount of $————. This adjustment to be subject to the approval of the President of the Company.

Dated at Burt, N. D., this 4 day of Dec., 1917.

A. A. Zemke                                    Frank Rokusck
As Adjuster for National Union                              Assured.
Fire Insurance Company.
Witness: E. G. Heinrich."

. That thereafter he received a draft for the amount of $1,376.60; that he cashed such draft; that such draft was Exhibit "B" in the words and figures as follows:

"Loss Hettinger.
. Loss No. 0453.        Draft No. —— December 11th 1917.
Upon acceptance by the National Union Fire Insurance Company

THE MELLON NATIONAL BANK, PITTSBURG, PA.

Will pay to the order of Frank Rokusck, Burt, N. D. Thirteen Hundred Seventy Six Dollars Sixty Cents, which payment, evidenced

by proper endorsement hereof, constitutes full satisfaction, compromise and indemnity for all claims and demands for loss and damage by Crop Failure 1917 to property described in Policy No. 4335 issued at its Burt, N. D. Agency, and said policy is hereby cancelled.

F. E. Church.

To the National Union Fire Insurance Company of Pittsburg, Pa.
Claim $1,376.60
Discount $——— Net $ ———

That he reads and understands English fairly well, but that he did not read either the paper first signed by him, or the draft; that he had an opportunity to read such paper and was not in any way prevented from so doing, but that he did not do so because he relied upon the statements made to him with reference to the matter by Zemke and Heinrich. On the other hand, Zemke testifies that he never saw or talked with Rokusek, the plaintiff; that the adjustment agreement was sent to him at Mott from Burt by Heinrich; that such instrument was by him sent to the head office of the company for action thereon. Heinrich, though available, was not called by either side. This action was begun on August 22, 1921. Rokusek testifies that he brought the action as soon as he learned of the real facts and circumstances and of his right to bring the same.

The defendant, on this appeal, specifies many assignments of error, including error in the selection of the jury; error on account of the ruling of the court with reference to admission of evidence; and questions the sufficiency of the evidence to sustain the verdict. However, in the defendant's brief and on the argument, many of these assignments were abandoned and need not now be considered.

The first assignment that challenges the attention of this court on this appeal, is that relating to the alleged error of the trial court in the selection of the jury. The defendant contends that on the record, the case comes within the rule as laid down in Wilkins v. National Union F. Ins. Co. 48 N. D. 1295, 189 N. W. 317. We approve and reaffirm the rule laid down in the Wilkins Case, but do not believe that it is necessary to base our holding in this case upon that ground. We therefore refrain from expressing any opinion as to whether the instant case comes within the rule therein laid down.

The next assignments, which we deem it necessary to consider, are those which touch the matter of the sufficiency of the evidence to sustain the verdict. It will be noted that this case is here on appeal from the judgment. There was no motion for a new trial. Neither was there a motion for judgment notwithstanding the verdict, although the defendant, at the close of the plaintiff's case, in the first instance, and again at the close of the whole case, did move for a directed verdict, specifying the same grounds now urged here, wherein it contends that the plaintiff's evidence is insufficient. The respondent argues that it is not possible for this court, at this time, to consider the matter of the insufficiency of the evidence, for the reason that on this appeal, being an appeal from the judgment and there having been no motion for a new trial or for judgment notwithstanding the verdict, only questions of law may be reviewed; that under chapter 133, Laws of 1921, the trial court is not permitted to rule upon motions for directed verdict in those cases where there is no disagreement of the jury; and that there can be no error of law in that respect, on the part of the trial court, without a ruling; that the only way in which such ruling can be had is by motion for judgment notwithstanding the verdict and there was no such motion in this case.

These contentions bring before us squarely the question of the effect of chapter 133, Laws 1921, in its relation to the Practice Act of 1913. Laws 1913, chap. 131. This court has held that where a motion for directed verdict is properly and seasonably made and the court rules thereon, the sufficiency of the evidence is challenged and a question of law thereby arises and that such matter may be reviewed upon appeal from the judgment.

Ness v. Jones, 10 N. D. 587, 88 Am. St. Rep. 755, 88 N. W. 706; Morris v. Minneapolis, St. P. & S. Ste. M. R. Co. 32 N. D. 366, 155 N. W. 861; Erickson v. Wiper, 33 N. D. 225, 157 N. W. 592; Jensen v. Bowen, 37 N. D. 352, 164 N. W. 4.

On the other hand, this court has held and repeatedly approved of that holding, that the sufficiency of the evidence to sustain the verdict cannot be reviewed on appeal from the judgment unless there has been a motion for a new trial or a motion for a directed verdict. See Morris v. Minneapolis, St. P. & S. Ste. M. R. Co. 32 N. D. 366, 155 N. W. 861; Horton v. Wright, B. & S. Co. 43 N. D. 114, 174 N. W. 67, and

cases cited; Lofthouse v. Galesburg State Bank, 48 N. D. 1019, 188 N. W. 585.

The real question here then is as to the legislative intent in enacting chapter 133, Laws 1921. It is therein provided that "when at the close of the testimony any party to the action moves the court to direct a verdict in his favor, and the adverse party objects thereto, such motion shall be denied and the court shall submit to the jury such issue or issues, within the pleadings on which any evidence has been taken, as either or any party to the action shall request, but upon a subsequent motion, by such moving party after verdict rendered in such action, that judgment be entered notwithstanding the verdict, or if the jury have failed to agree upon a verdict, for a directed verdict, the court shall grant the same if, upon the evidence as it stood at the time such motion to direct a verdict was made, the moving party was entitled to such directed verdict. An order for a judgment notwithstanding the verdict may also be made on a motion in the alternative form asking therefor, or if the same be denied, for a new trial. . . ."

This act has made no change in the effectiveness of a motion for a new trial, or of a motion for judgment notwithstanding the verdict made after the denial of a motion for a directed verdict for the purpose of raising, on appeal from a judgment, the question of the sufficiency of the evidence. But, it is urged by respondent that inasmuch as the motion for a directed verdict was not followed up by a motion for judgment notwithstanding the verdict, or for a new trial, the question of the sufficiency of the evidence is not now reviewable in this Court; that the court being required by law to deny the motion for a directed verdict, there is no error of law for this Court to review. It must be remembered, however, that in order to obtain a review of the question of the sufficiency of the evidence, where a motion for a directed verdict has been made, or when followed by a motion for judgment notwithstanding the verdict, it always has been, and still is, necessary to specify the insufficiency of the evidence as a ground of such motion. Where a motion for a directed verdict, therefor, is made, the Court has notice that the moving party questions the sufficiency of the evidence to warrant a verdict against him; and although he is compelled by law to deny the motion, he may, if he believes the motion should, were it not for such a law, be granted, request the moving party to make a mo-

tion for a new trial or a motion for judgment notwithstanding the verdict. And, if the moving party accede to the request he may make either of these motions, singly, or both jointly, and in the alternative. If the court does not request a motion for a new trial or for judgment notwithstanding the verdict, he is deemed to have adopted, as his own, the ruling forced upon him by law. As further indicative of the legislative intent, we call attention to senate bill No. 280 passed at the 1923 Legislative Session. This is a re-enactment of chapter 133, Laws of 1921, identical with that chapter, excepting that it further provides "The ruling on a motion for a directed verdict may be reviewed by the supreme court without a motion for judgment notwithstanding the verdict, or a motion in the alternative for such judgment or for a new trial having been first made in the trial court." It follows that motions having been duly made for a directed verdict, and the court not having notified the moving party that he desired a motion for a new trial or for judgment notwithstanding the verdict, to be made, a question of law involving the sufficiency of the evidence has been raised which we must consider and dispose of on appeal.

It stands undisputed in the record that the plaintiff did sign the instrument Exhibit "A", hereinbefore set out, on the 4th day of December, 1917, and that on the 11th day of December, 1917, the plaintiff did receive the draft Exhibit "B", which he subsequently indorsed and cashed. The defendant relies upon Exhibits "A" and "B" as establishing an accord and satisfaction. The plaintiff contends that in the first place, under our statute, they do not constitute and show an accord and satisfaction, and next, that even though they might, nevertheless that they were obtained through fraud and false representation and that they cannot therefore be available to the defendant. That, in fact, the plaintiff relied upon the statements of the adjuster Zemke, and while he signed Exhibit "A," he did so, believing that it was merely an adjustment of his claim in full and a receipt acknowledging the receipt by him of the moneys that were to be paid in cash immediately on account of his loss, and that he was bound thereby to that extent and not otherwise. That likewise the draft Exhibit "B" was received, indorsed and cashed by him, and that notwithstanding the wording of such exhibit, he cannot be said to have received the

proceeds of the same in full satisfaction of the claim on account of his policy as against the defendant.

There is no question but that the plaintiff, while having a somewhat faulty knowledge of English, was nevertheless sufficiently informed so as to be able to read both of the exhibits in question had he so desired. No artifice was resorted to to prevent him from so doing, and in fact, according to his own testimony, Exhibit "A" was signed not in the presence of Zemke, the adjuster, but in the bank at Burt and in the presence of Heinrich several days after the interview with Zemke. While Heinrich was the agent of the defendant who procured the writing of the policy of insurance with the plaintiff, he was also the plaintiff's banker, and, to some extent at least, the plaintiff's business adviser. There is nothing in the record to show that at the time of the adjustment Heinrich was the defendant's agent, or had any authority to act for it in making adjustments. There is no evidence to indicate that, if the plaintiff did not read the exhibits in question, he was in any way prevented from doing so had he had the inclination. That being the case, we must hold, and we believe it is elementary law, that the plaintiff having through his own fault failed to read the instruments in question is bound thereby unless he can establish that he was induced to sign the same by means of fraud or misrepresentation on the part of the defendant. Little v. Little, 2 N. D. 175, 49 N. W. 736; 6 R. C. L. 43; 13 C. J. 370. This especially in view of the fact that the defendant on receipt of the instrument acted on it, paid as required hereby, and the plaintiff accepted and kept the money paid.

Under our statute, an accord is defined as "an agreement to accept in extinction of an obligation something different from or less than that to which the person agreeing to accept is entitled." Comp. Laws, 1913, § 5823. "Acceptance by the creditor of the consideration of an accord extinguishes the obligation and is called satisfaction." Comp. Laws, 1913, § 5827. "Part performance of an obligation either before, or after a breach thereof, when expressly accepted by the creditor in writing in satisfaction, or rendered in pursuance of an agreement in writing for that purpose, though without any new consideration, extinguishes the obligation." Comp. Laws, 1913, § 5828.

We have no hesitancy in holding that Exhibits "A" and "B" at

least when taken together, constitute, on the record as made, an executed accord and extinguish fully the obligation of the defendant on account of the policy of insurance unless the same were procured by fraud on the part of the defendant.

Strobeck v. Blackmore, 38 N. D. 600, 165 N. W. 980; Adams v. Morehead, 45 S. D. 216, 186 N. W. 830.

Let us now further examine the record and ascertain whether the instruments Exhibits "A" and "B" were, in fact, obtained through fraud on the part of the defendant. Taking the plaintiff's own version of the matter, which is denied in toto by Zemke, the most that the plaintiff contends for is that he met Zemke; that Zemke told him he would adjust his loss in full, but that the defendant company was insolvent; that the most it could pay was fifty cents on the dollar of its policy losses; that it would immediately pay the plaintiff fifty cents on the dollar of his loss and if it paid any other policy holder more, it would pay the plaintiff the same; that the plaintiff was not satisfied with such an arrangement; that he advised Zemke to that effect; and he said he desired to consult Heinrich first; that Heinrich was his banker and advised him in business matters; that nothing further was said between Zemke and the plaintiff; that some days later, the plaintiff went to Burt and inquired about the matter; that at that time Zemke was not present; that Heinrich told the plaintiff that Zemke had left the papers there for him and that they were ready to sign up; that he told Heinrich of his talk with Zemke and asked if it was true that the defendant company was bankrupt; that Heinrich said "so far as he found out they were going to go bankrupt"; that he thereupon signed the paper Exhibit "A," believing that the representations made by Zemke were, in fact, true and that when he so signed such paper he thought it was an adjustment of his claim in full and a receipt for the 50 per cent to be later paid him; that when the draft Exhibit "B" came, he cashed the same, knowing that it was a draft but thinking that it was paid in accordance with his conversation with Zemke; that he did not read either Exhibit "A" or Exhibit "B," but was not prevented from doing so; that in fact the company was not insolvent, and that it had prior thereto paid, and did thereafter pay, more than fifty cents on the dollar of their losses to various other policy holders; that more than three years after he received this money so paid to him,

and as soon as he learned of his right to do so he brought this action. Conceding that all of these things so testified to by the plaintiff are in fact true, do they establish such a positive and certain showing as to warrant the jury in finding such fraud as to avoid the plain purpose and effect of the instruments in question? We do not think so. The rule is that in order to abrogate the effect of a written instrument, the showing of fraud by him who desires to be released, must be established by evidence sufficient to satisfy the judgment and conscience of the jury thereof. Guild v. More, 32 N. D. 432, 155 N. W. 44; M. E. Smith & Co. v. Kimble, 38 S. D. 511, 162 N. W. 162. While it is true that a preponderance of the evidence is sufficient to establish fraud so as to avoid a written instrument, yet in weighing the evidence there must be taken into consideration the various presumptions that may be raised by reason of the circumstances as shown. Courts have used many and varied expressions and terms in attempting to state the requirements as to proofs in such cases. See note to Lepley v. Andersen, 33 L.R.A.(N.S.) 836. While apparently there is wide divergence of opinion as to the proof required to establish fraud, we believe that that divergence is more apparent than real, and that every case must be viewed in the light of its peculiar and distinctive facts. In cases where fraud is charged he who complains of fraud on the part of another must always overcome the presumption of innocence, the strongest of rebuttable presumptions, which the law raises in behalf of him who is charged with dishonesty or other moral delinquency. 1 Jones, Ev. 13 and cases cited.

We believe that what we have said regarding the plaintiff's contention that the instruments, Exhibits "A" and "B," should be avoided on account of fraud is decisive of this appeal. But even though those instruments were obtained by fraud, nevertheless on the record as made we do not believe that the plaintiff is entitled to the relief that he seeks. It is difficult to determine just what theory the plaintiff's case is predicated on. The complaint is indefinite and general. The defendant at the threshold of the case demanded that the plaintiff indicate the theory that he intended to pursue. This the plaintiff did not do, nor was he required to do so by the trial court. We must presume that his theories, if he relied on more than one, were consistent. Certain it is that if they were inconsistent he must elect. Sonnesyn v. Akin, 14 N. D.

248, 104 N. W. 1026.   However, after careful consideration of the pleadings and the record, it is clear to us that the action is not one for damages on account of fraud.   But this does not dispose of the difficulty.   The plaintiff contends that the agreement which was made and entered into by and between himself and the adjuster Zemke was that the loss should be adjusted at the full amount claimed, but that owing to the fact that the defendant company was insolvent and unable to pay the full amount of the adjusted losses that a payment of only 50 per cent to the plaintiff should be made, and if any other policy holder received more than fifty per cent on account of his loss that the plaintiff should receive the same; that in accordance with this agreement the plaintiff surrendered his policy; that the company was not insolvent; that the plaintiff signed the instrument, Exhibit "A," believing that it embodied the terms of the accord agreement as thus made and entered into, and that when he received and cashed the draft, Exhibit "B," he did so under the belief that the payment so made was made to and received by him in accordance with such agreement.   Thus it will be seen that the plaintiff's position is that there was fraud on the part of the defendant in two respects: first, with respect to the representation as to the insolvency of the defendant company, by reason of which the plaintiff was induced to enter into an accord; and second, with respect to the procuring of the signature of the plaintiff to the instrument, Exhibit "A," and the receipt and cashing of the draft, Exhibit "B," whereby he was induced to and did enter into and satisfy an accord different from that agreed upon.

It is impossible to say whether the suit is upon the original contract on the theory that any agreement of accord that may have been entered into, executed, and satisfied, was void by reason of fraud; or whether it is upon the original contract on the theory that the accord and satisfaction as evidenced by Exhibits "A" and "B" were fraudulently procured and that the accord in fact entered into has not been satisfied; or whether the suit is upon such unsatisfied accord.   If the contract as evidenced by Exhibits "A" and "B" was in fact the contract intended to be entered into by both of the parties, then there was no fraud with respect to the execution of the same excepting insofar as it was induced by the fraudulent representation of the defendant that it was insolvent; and if the plaintiff has elected to rescind on account of that fraud

and is suing on the original policy contract for the loss incurred thereunder irrespective of any accord agreement, he must fail because he has made no proper rescission. It stands undisputed that long prior to beginning his suit, he received and retained a payment in amount approximately 50 per cent of the loss which he claims to have suffered. Such payment was unquestionably made by the defendant company under the terms and conditions set out in the instrument, Exhibit "A." So far as the record shows, the only authority Zemke had was to make adjustments subject to the approval of the company. In this instance, Exhibit "A" was sent by Zemke to the company, approved and payment made by Exhibit "B." If the plaintiff desires to rescind that contract on account of fraud by reason of the false representation as to the insolvency of the company, which induced the accord agreement, and sue on the original policy, he must surrender that which he received under such fraudulent contract, for he cannot retain the benefits and repudiate the contract. Comp. Laws 1913, § 5936; Swan v. Great Northern R. Co. 40 N. D. 258, L.R.A.1918F, 1063, 168 N. W. 657. The record establishes that the moneys that in fact were received in the amount of $1,376.60 have never been returned or offered to be returned to the defendant. The plaintiff still has the fruits of this contract which he claims is void because of fraud. There is no question but that there was a controversy between the parties as to the amount that the plaintiff should be paid on account of his loss. Certainly under the authority of the Swan Case, supra, there must be a rescission and tender back of money paid before the plaintiff can sue on the original contract on the theory last above outlined.

Assuming now that the plaintiff did enter into the arrangement and agreement with the defendant company through the adjuster Zemke, as the plaintiff contends he in fact did, and that this suit is brought upon such agreement, and that the contract as evidenced by Exhibits "A" and "B" is in fact fraudulent and void, is there such a contract as is binding upon and may be enforced by either of the parties? Is that which was said between them sufficiently definite and certain to constitute a contract? Conceding that it is, and that there was such a contract, has the plaintiff established those matters necessary and essential to enable him to recover on account of the same? In order to recover in such an action, if he relies upon that agreement he must

establish that the company did pay other of its policy holders more than fifty per cent of their losses and the amount so paid. Has he met this requirement? The only testimony in the record touching that matter is the testimony of the plaintiff's attorney, Mr. Murray. Murray testifies that the defendant did pay as high as ninety-five per cent of the amounts of the claims of certain other policy holders having policies identical with the plaintiff's, but that such payments were in every case after suit brought and judgment obtained; that is, such payments so made were involuntary payments. It seems clear to us that the contract entered into by the defendant did not in any event, contemplate that any payments made in excess of fifty per cent should be involuntary payments on account of judgment obtained, but contemplated only voluntary payments; and that, therefore, the plaintiff has not in that respect established his right to recover any further amount. This disposes of the contention of the plaintiff that he is entitled to recover when suing on the agreement of accord.

Considering now his other possible theory, that is, that he is suing on the original contract by reason of the fact that there was a failure to satisfy the accord which was agreed upon, and that he may, therefore, credit on the amount of his original claim the payment made by the defendant company and received by him, and sue for the balance. There is no question but that if there was an *accord* and not a *novation,* and the accord was not executed and satisfied, that he can do this. Lehde v. National Union F. Ins. Co. 46 N. D. 162, 180 N. W. 56. However, this theory is necessarily predicated upon the assumption that there was an accord agreement, and that the same has not been satisfied. That being the case, what we have said above with reference to the suit on the accord agreement likewise holds when applied to a suit on the original policy for the balance remaining unpaid when the accord is not satisfied. There is no testimony showing an unsatisfied contract of accord.

So in any event, considering the plaintiff's case under any of the various possible theories which he seems to have relied upon at one time or another in the course of the trial or on the argument in this court, it is clear to us that the plaintiff cannot prevail. The motion for a directed verdict was good. That being the case, the judgment

must be reversed and judgment notwithstanding the verdict ordered for the defendant. It is so ordered, the defendant to recover its costs.

BIRDZELL, CHRISTIANSON, and JOHNSON, JJ., and COOLEY, Dist. J., concur.

Mr. Chief Justice BRONSON, being disqualified, did not participate; Honorable CHAS. M. COOLEY, of the First Judicial District, sitting in his stead.