THE NORTHERN TRUST COMPANY, a Corporation, Respondent, v. HAVELOCK EQUITY EXCHANGE, a Corporation; Joe Shauf; C. L. Rafferty, J. C. Miller, Theo. Guthensohn, and John Adams, Appellants,

(199 N. W. 763.)

**Judgment — when judgment notwithstanding verdict should be ordered, stated.**

Where the evidence in a case tried to a jury is such that the plaintiff is entitled to judgment as a matter of law, and it further is clear upon the record there is no reasonable probability that any evidence can be produced upon a retrial which will defeat plaintiff's right to recover such judgment, it is the duty of the trial court, upon proper motion on the part of the plaintiff, to order judgment in his behalf notwithstanding a verdict in favor of the defendant.

Opinion filed July 28, 1924.

Judgments, 33 C. J. § 114 p. 1185 n. 52.

From a judgment of the District Court of Hettinger County, *Berry,* J. defendants appeal.

Affirmed.

*Jacobsen & Murray,* and *Harvey J. Miller,* for appellant.

To constitute legal deceit and fraud by the use of language, the language need not affirm the existence or nonexistence of something which is untrue; it is sufficient if the language of one party misleads the other party as to the existence of fact, and thereby induces him to enter into the contract. 26 C. J. 1066, § 8.

The gist of a fraudulent representation is the producing of false impression upon the mind of the other party, and if this result is actually accomplished the means of producing it are immaterial. Henry v. Collier (Okla.) 169 Pac. 636.

But it is generally held that a deliberate failure to correct a delusion

Note.—Right to judgment non obstante veredicto because of failure of proof, see notes in 12 L.R.A.(N.S.) 1021; L.R.A.1916E, 828; 15 R. C. L. 606; 3 R. C. L. Supp. 474; 5 R. C. L. Supp. 844.

may constitute fraud. National Cash Register Co. v. Merrigan (Minn.) 181 N. W. 585.

Insertion of an unauthorized provision in a mortgage, held fraud. Muller v. Rosenblath, 157 App. Div. 513, 142 N. Y. Supp. 602.

The signing of a paper does not make a contract. Mathias v. State Farmers Mut. Hail Ins. Co. 168 N. W. 664; Bean v. Pioneer Min. Co. (Cal.) 6 Pac. 86; Mcgowan v. Peterson, 173 N. Y. 1, 65 N. E. 738; Birmingham Iron Foundry v. Regnery, 33 Pa. Super. Ct. 54; American Trust Co. v. Canevin, 107 C. C. A. 543, 184 Fed. 657.

*Pierce, Tenneson, Cupler & Slambaugh,* for respondent.

The defendant strenuously contends that but for such alleged fraud he would not have signed the note or the contract. According to his own testimony and answer, however, he did sign a contract which contains all the terms precisely as arranged between himself and the agent while the oral negotiations were pending, except in the single particular that the agent assured him that all papers would be returned in the event of cancellation, while the written agreement as signed stipulated for a refund of the purchase price, but not a return of the identical note.

It seems to be elementary that a party to a written agreement is bound thereby, and it is no defense to show that he neglected to read it before signing the same, unless he can prove that he was prevented from reading the instrument by fraud, artifice, or design of the other party, or his authorized representative. Rokusek v. Nat. Union F. Ins. Co. (N. D.) 195 N. W. 300; Little v. Little, 2 N. D. 175, 49 N. W. 736; 13 C. J. 370; Embden State Bank v. Shea, 196 N. W. 307.

False representations as to the legal effect of an instrument are no bar to an action thereon, as a party signing such an instrument is presumed to know its contents and has no right to rely on the representations of the other party as to its legal effect. 13 C. J. 387, § 286, and cases cited in note 58, among which are the following applicable to the facts in the case. Upton v. Tribilcock, 91 U. S. 45, 23 L. ed. 203 (representation as to legal effect of a stock subscription); Clem v. Newcastle, R. R. Co. 9 Ind. 488, 68 Am. Dec. 653 (representation as to legal effect of stock subscription); Thompson v. Phoenix Ins. Co. 75 Me. 55, 46 Am. Rep. 357.

That a representation as to the legal effect of an instrument is not within the definition of fraud under our statute, see also: Hellebust v. Bond (N. D.) 172 N. W. 812; also cited in 26 C. J. p. 1207, note 87. See also to the same effect, 26 C. J. p. 1210, and cases cited in note 26.

CHRISTIANSON, J.    The plaintiff is a surety company organized under the laws of this state.  The defendant, Havelock Equity Exchange was (during the time involved in this controversy), a corporation, organized under the laws of this state, and engaged in the business of a public warehouseman; and as such it operated an elevator for the storage, handling and marketing of grain.  The individual defendants are the directors of the Havelock Equity Exchange.  In order to be licensed to carry on its business as a public warehouseman, the Havelock Equity Exchange was required to furnish a bond in the sum of $5,000.  On or about September 29th, 1919, there was transmitted to the plaintiff an application for such warehouseman's bond.  The application was signed by the Havelock Equity Exchange by its president and secretary and also by the individual defendants named in the title of this action.  The concluding portion of the application, including the signatures, was in words and figures as follows, to wit:

In consideration of The Northern Trust Company issuing the bond herein applied for, we do each hereby agree, warrant and covenant with it, that the foregoing statements are just, full, true and complete expositions of all the facts and circumstances relative to the matters inquired about, and that the answers and representations are made the basis on which the said The Northern Trust Company becomes surety on the bond herein applied for, and we further undertake and agree, each for ourselves, our heirs, executors, assigns and successors in interest, jointly and severally:    To pay the premium agreed upon for said bond; to comply with the conditions established by said company for its own protection, and which have been, or may hereafter be, set out in its by-laws or resolutions of its board of directors, especially waiving notice or knowledge of the same; to indemnify and to save harmless the said The Northern Trust Company from and against all loss, costs, suits, damages, counsel fees and expense

of whatever nature, which said Company may, for any cause, at any time, sustain or be put to, for, or by reason, or in consequence of said Company having entered into said bond, or in any continuation or extension thereof; to pay said Company upon demand any and all sums which it may in good faith pay, or cause to be paid to the beneficiary under said bond, or any continuation or extension thereof, upon an investigation which shall satisfy the officers of said Company that it is liable for a loss under the conditions of the same; to pay all costs and expenses which said Company may incur in obtaining a release or discharge as surety upon this bond herein applied for, or any continuation or extension thereof. This obligation shall be binding upon the principal on said bond and also upon each and every individual signing this application personally.

Dated at *Havelock, N. Dak.* this *29th* day of *Sept. 1919*

*Havelock Equity Exchange,*

(Full name of firm or corporation)

(Corporate seal)  *By C. L. Rafferty*

President.

Notice  *and Theo. Gustensohn*

Secretary.

If Corporation, this application  *Joe Shauf*
must be signed in the name of the  Personally.
Corporation, by its President and  *C. L. Rafferty*
Secretary, and also by each of the  Personally.
officers and directors, Personally.  *J. C. Miller*

Personally.

If a Co-partnership, this applica-  *Theo. Guthensohn*
tion must be signed in the name  Personally.
of the co-partnership, and also by  *John Adams*
each of the partners, Personally.  Personally.

Pursuant to said application the plaintiff executed the public warehouseman's bond of the Havelock Equity Exchange, that is, it executed such bond as surety thereon. The bond was in the penal sum of $5,000, and conditioned that the Havelock Equity Exchange should fulfill, perform and discharge its duties as public warehouseman and comply with all the rules and regulations of the state of North Dakota relative

thereto, and should pay for all grain purchased and all sums for which said Havelock Equity Exchange should become liable upon warehouse receipts or storage tickets. Such bond was approved by the State Inspector of Grades, Weights and Measures on November 20, 1919, and license was thereupon issued to said Havelock Equity Exchange. During the term of such license and bond the Havelock Equity Exchange became bankrupt. At the time of its failure there were outstanding and unredeemed storage tickets for grain stored by it of the value of approximately $15,000. The Havelock Equity Exchange having failed to redeem these storage tickets upon demand, the holders thereof made demand for their redemption upon the plaintiff Northern Trust Company, as surety upon said warehouseman's bond. Thereafter in July 1922, an action was brought for and on behalf of the holders of such storage tickets to recover upon said bond. On September 14th, 1922, an order was made in such action, directing the plaintiff, The Northern Trust Company to deposit the said sum of $5,000, with a depositary designated by the court to be held and distributed to the holders of said outstanding storage tickets in such amounts as the court should, by the judgment entered in said action, determine they were entitled to. The plaintiff, The Northern Trust Company, deposited said sum of $5,000, as directed by said order on October 10th, 1922. Thereafter it demanded of the defendants that they repay said money to it in accordance with the indemnity agreement. The defendants failed and refused to make such payment whereupon the plaintiff instituted this action to recover said sum of $5,000, and interest.

In the answer interposed by the individual defendants in this action they admit that the above-named individual defendants, acting in their representative capacity as board of directors of said Havelock Equity Exchange, made application to the plaintiff for a warehouseman's bond. They also admit that such bond was executed by the plaintiff and that loss was sustained thereunder and that the plaintiff paid to the holders of storage tickets, issued by the Havelock Equity Exchange, the full amount of the penalty of said bond, to wit: the sum of $5,000. The defendants further allege that the plaintiff prepared and furnished the defendant Havelock Equity Exchange with a form of application for such surety bond; that the plaintiff, its officers, agents and servants, represented to the defendants, and led them to believe, that the said

Havelock Equity Exchange was making said application and that the individual defendants, in signing their names thereto, did so in their representative capacity as directors of said Havelock Equity Exchange, and that they assumed no individual liability; that the plaintiff wrote and prepared said application; that by an ordinary reading of the same by an ordinary individual nothing could be discerned therefrom except an ordinary application for a bond; that the plaintiff so wrote and prepared the form of said application so as to directly cover up and camouflage, in the form of an application, the indemnity provision therein contained, and did so for the purpose of misleading the defendants and acquiring their signatures to said application; that said representations on the part of the plaintiff, its agents and servants, that the said written instrument was merely an application for a bond was false and known to the plaintiff to be false and made with the intent of deceiving and defrauding the defendants; that the defendants believed the representations on the part of the plaintiff that they were signing merely an application for a bond and that it did not contain any personal obligation on their part and that they verily believed that in signing said application they signed the same merely as directors for the Havelock Equity Exchange and in no manner bound themselves as individuals. The case was tried to a jury upon the issues framed by the complaint and the answer. The jury returned a verdict in favor of the defendants. Plaintiff moved for a judgment notwithstanding the verdict or for a new trial. After hearing and due consideration the trial court granted the motion for judgment notwithstanding the verdict. Judgment was entered accordingly and the defendants have appealed.

The sole question presented on this appeal is whether the trial court was correct in granting judgment notwithstanding the verdict,—in other words, whether upon the record as a whole the plaintiff is entitled to judgment, as a matter of law. First State Bank v. Kelly, 30 N. D. 84, 98, 152 N. W. 125, Ann. Cas. 1917D, 1044. After careful consideration of all the evidence we are of the opinion that this question must be answered in the affirmative. The defendants testified that the application for the bond was presented to them by one Delaney, the cashier of a bank at Havelock; that Delaney said "Here is an application that I want you fellows to sign, for a bond;" that

when this statement was made by Delaney the application was lying on the table in the room where the directors and officers of the Havelock Equity Exchange were gathered; that from Delaney's statement they inferred that there was no personal liability on their part in signing the instrument and that they merely signed it as directors and officers of the Havelock Equity Exchange. It is contended that Delaney was the agent of the plaintiff and that his representations were binding upon the plaintiff. It is further contended that the form of application as prepared was in and of itself a fraudulent device and a trap to obtain the execution of the indemnity agreement by parties who believed that they were in fact assuming no personal liability whatsoever. We have the gravest doubt if there is any substantial evidence that Delaney was the agent of the plaintiff for any purpose whatsoever. It rather appears to us that the evidence does not establish any such agency. The trial court, however, assumed that agency was established and disposed of the case on that theory; and, inasmuch. as we are of the opinion that the result must be the same whether such agency on the part of Delaney was established or not, we shall, for the purposes of this opinion, assume that Delaney was authorized to solicit applications for surety bonds and transmit the same to the plaintiff for approval or rejection. While, as already stated, the defendants testified that the application was presented to them by Delaney, the undisputed evidence shows that Delaney did not prepare the application or fill in the blanks therein but that this was done by the manager of the elevator of the Havelock Equity Exchange; that all Delaney did was to ask defendants to sign the application which was lying on the table; and that after the application was executed he transmitted it to the plaintiff. Each of the defendants admits that he was able to read the application and that he had full opportunity to do so. Some of the defendants appear uncertain whether they did or did not read it, but all of them say they glanced over at least part of it. The evidence further shows that three of the defendants on two previous occasions had signed similar applications for similar bonds which the plaintiff had executed as surety for the Havelock Equity Exchange. In granting the motion for judgment notwithstanding the verdict the trial judge filed a memorandum opinion wherein he said:

"The application for bond for public warehouseman was presented

by Mr. Delaney, the agent of the plaintiff, to the defendants at their meeting in their elevator and the evidence shows that he made the following statement 'This is an application' or 'this is the application.' Thereupon the defendants took the application, Exhibit # 1, and signed the same as it now appears to be signed.

"Mr. Murray, counsel for the defendants, as well as Mr. Miller, claims that the defendants were defrauded. He claims that the indemnity clause is such an insertion in the instrument of foreign matter that the same is not germane to the instrument and that they had a right to rely on the title, viz., 'Application for a Bond for Warehouseman,' and he contends that the indemnity clause is so foreign to the title that it amounts to fraud. I do not agree with Mr. Murray in this contention. *The instrument must stand as a valid application and binding upon the signers thereof, and in the absence of mutual mistake and unless induced to sign said instrument by fraud or deceit, one who deliberately signs a written contract without reading the same, is precluded thereby as against the other party to such contract.'* Rokusek v. National Union F. Ins. Co. 50 N. D. 123, 195 N. W. 300, a North Dakota case recently decided.

"I have examined this instrument, Exhibit # 1, carefully. I cannot say as a matter of law that the one who drew up that instrument intended that it should be an instrumentality through which fraud could be accomplished. I am inclined to the opinion that the indemnity clause is germane to the subject. In any event the defendants signed on a line under which was written the word 'personally,' and near their signatures, to the left, was a notice which reads as follows: 'If corporation, this application must be signed in the name of the corporation, by its president and secretary, and also by each of the officers and directors, *personally.'* The word personally is in capital letters.

"I have carefully examined this instrument and the evidence in the case and I cannot find where there is any 'suggestion as a fact of that which is not true by one who does not believe it to be true.' There is no 'positive assertion in a manner not warranted by the information of the person making it of that which is not true, though he believes it to be true.' There is no 'suggestion of that which is true by one having knowledge or belief of the facts.' There is nothing in connection

51 N. D.—23.

with this instrument or the evidence in the case which is fitted to deceive. The evidence shows that all of the defendants can read. They were not prevented from reading the instrument by the plaintiff or its agent, and in the opinion of the court the application was drafted fairly and without any intention of committing a fraud on anyone. The defendants must have known that the application would be used by the company as a basis for the issuance of the bond. They must have known that the plaintiff would rely upon the statements contained in the instrument, including the indemnity clause when it issued the bond upon said application.

"Having taken this view of the law in the case, it becomes the duty of the court to order a judgment in favor of the plaintiff against all of the defendants, notwithstanding the verdict of the jury and the judgment already entered. The case was thoroughly submitted by the attorneys for the defendants and in the opinion of the court the insufficiency of the evidence of defendants to sustain their defense could not be remedied by a new trial."

These views of the trial court meet with our entire approval and are decisive of this case. The judgment appealed from is affirmed.

BRONSON, Ch. J., and JOHNSON, BIRDZELL, and NUESSLE, JJ., concur.