THE STATE OF NORTH DAKOTA EX REL. ARTHUR B. ATKINS, as Administrator of the Estate of Mary Cole, Deceased, Appellant, v. E. T. LAWLER, A. Grunfelder, Jacob Schall, Ed McConville and Joe Glass, as Members of the Board of County Commissioners of Emmons County, North Dakota, and Albert Tough as County Treasurer of Emmons County, North Dakota, Respondents.

(205 N. W. 880.)

**Taxation — county may not enter into competitive bidding for private bidders at tax sale.**

1. Under the laws of this state a county may not enter into competitive bidding with private bidders at a tax sale. A county treasurer is authorized to bid in a tract of real estate at such sale in the name of the county only in case there is no lawful bid therefor by any private bidder.

**Taxation — statutory provisions as to penalty and interest on tax sales certificates held applicable to certificates of sale issued to county.**

2. The statutory provisions relating to penalty and interest upon tax sales certificates are applicable to certificates of sale issued to a county as well as to those issued to a private bidder.

**Constitutional Law — statute providing for reduction of rate of interest on redemption of land sold to county for taxes, held not unconstitutional nor invalid.**

3. For reasons stated in the opinion, it is *held* that chapter 210, Laws 1925, which provides "for a reduction in rate of interest upon redemption of real estate sold to the county for taxes of 1923 or any prior year, and still held by the county provided such redemption is made on or before November first, 1925," does not contravene §§ 16, 20, 69 and 70 of the Constitution of North Dakota.

Opinion filed October 24, 1925.

Constitutional Law, 12 C. J. 619 p. 1002 n. 25; § 855 p. 1129 n. 18, 21, 23; p. 1130 n. 24, 25, 27. Statutes, 36 Cyc. p. 985 n. 69; p. 986 n. 71, 72; p. 993 n. 93; p. 1010 n. 51. Taxation, 37 Cyc. p. 745 n. 66 New, 68; p. 1354 n. 82, 83; p. 1382 n. 84; p. 1410 n. 77, 80.

**Note.**—(1) As to the right of public officer to purchase tax certificate or tax title, see annotation in 5 A.L.R. 969.

Appeal from the District Court of Emmons County, *McKenna, J.*

Plaintiff appeals from a judgment denying his application for a Writ of Mandamus to compel the county treasurer of Emmons county to accept certain moneys tendered in payment of tax certificates and subsequent taxes held by Emmons county against certain lands in that county.

Reversed.

*A. B. Atkins* and *Scott Cameron,* for appellant.

A general law may be constitutional and yet operate in fact only upon a very limited number of persons, or things, or within a limited territory. But so far as it is operative, its burdens and benefits must bear alike upon all persons and things upon which it does operate, and the statute must contain no provision that would exclude or impede this uniform operation upon all citizens, or all subjects and places, within the state, provided that they were brought within the relations and circumstances specified in the act. Vermont Loan & Trust Co. v. Whited, 2 N. D. 82.

The privileges and immunities of citizens of several states are those privileges and immunities which are in their nature fundamental; which being of right to the citizens of free governments; and which have at all times been enjoyed by citizens of the several states which compose this union from the time of their becoming free, independent and sovereign. Brawner v. Irwin, 169 Fed. 964.

A provision that delinquent taxpayers should not be permitted to exercise certain of their civil rights may be made applicable to taxes in arrears at the time of its enactment. 26 R. C. L. 387.

Delinquent taxes do not bear interest in the absence of express provision of law. 26 R. C. L. 386.

*Chas. Coventry,* for respondents.

A purchase at a tax sale is a contract. Roberts v. First Nat. Bank, 8 N. D. 504, 79 N. W. 1049; Payne v. Dickey County, 8 N. D. 585; Blakemore v. Cooper, 15 N. D. 12, 13; 47 N. D. 552, 553 and cases cited.

No bill of attainder, ex post facto law, or law impairing the obligation of contracts shall be passed. Const. § 16.

As to a purchaser at a tax sale, it is well settled that the statute in force at the time of the sale, becomes a part of his contract and it is

beyond the power of the legislature to sweep away to his disadvantage by subsequent legislature. Blakemore v. Cooper, supra; Fischer v. Betts, 12 N. D. 198, 96 N. W. 132; Merrill v. Deering, 32 Minn. 479, 21 N. W. 721; Cooley, Tax'n, 350.

The subject-matter of the statute—the collection of unpaid taxes upon real estate—is one of common interest to every citizen and tax-payer within the state. It is further true that the operation of the law is not in express terms confined to particular localities or to a par-ticular class of individuals. Angell v. Cass County, 11 N. D. 265, 91 N. W. 72.

So far as his particular provision of the Constitution against special legislation is concerned, it is immaterial that the act is general in form. The question is always as to its effect. Any other doctrine would render nugatory the prohibition of the fundamental law against special legislation. Edmunds v. Hebrandson, 2 N. D. 270.

While taxes include a penalty for nonpayment which by force of the statute becomes part of the tax, yet ordinarily the imposition of a penalty is not a tax. Cooley, Taxn, 4th ed. § 35.

Penalties as well as interest become part of the tax. Sedgewick Co. v. Wichita, 64 Pac. 621; State v. Bowker, 4 Kan. 115; Kansas P. R. Co. v. Amrine, 10 Kan. 318; Blake v. People, 109 Ill. 504; State v. Ivey, 42 Nebr. 186, 60 N. W. 601.

CHRISTIANSON, Ch. J. The question presented for determination on this appeal is: "What rate of interest may be collected by a county upon redemption of real estate sold to it for taxes for 1923 and prior years in event redemption is made on or before November 1st, 1925?"

The question arises upon the following undisputed facts: One Mary Cole died seized of certain real property in Emmons county and the relator Atkins was appointed administrator of her estate. The taxes upon said real property for the year 1920 became delinquent and said real property was offered for sale at the annual tax sale held in Decem-ber 1921; there were no bidders and the property was struck off to Emmons county, upon the bid of the county treasurer, at the maximum interest rate of 12 per cent per annum, and tax certificates in evi-dence of such sale were executed by the county auditor. Emmons county became, and still is, the holder of such tax certificates. Subse-

quent taxes against the lands for the years 1921, 1922 and 1923, also, remained unpaid. Before the commencement of this proceeding the relator, as administrator of the estate of Mary Cole, deceased, tendered to the county treasurer of Emmons county the total amount of such tax certificates and of all the subsequent taxes together with interest on the amount of the tax sale certificates at 6 per cent per annum from the date of sale, and interest on the subsequent taxes at the rate of 6 per cent per annum from the dates when such taxes became due. The county treasurer of Emmons refused to accept this sum and refused to issue tax receipts and redemption receipts therefor, claiming that Emmons county is entitled to receive a 5 per cent penalty upon such tax sale certificates and interest upon the certificates, and upon said subsequent taxes, at the rate of 12 per cent per annum instead of at the rate of 6 per cent per annum as tendered by the relator. In other words, the precise point in dispute between the parties is whether Emmons county is entitled to recover only interest at the rate of 6 per cent per annum upon the tax certificates and subsequent taxes; or a 5 per cent penalty and interest at the rate of 12 per cent per annum upon the amount of its tax sale certificates, and interest at 12 per cent per annum upon the subsequent taxes.

The relator contends that the county is entitled to receive only interest at the rate of 6 per cent per annum upon said amounts, and that the amount tendered by him in payment of the taxes in controversy is adequate for two reasons:

(1) That the amount so tendered is the full amount required under the provisions of chapter 210, Laws 1925, which so far as material here reads as follows:

"Real estate sold to the county for taxes of 1923 or any prior year and still held by the county at the time this act takes effect may be redeemed upon payment of the amount for which it was sold at tax sale together with interest thereon at six per cent (6%) per annum from the date of sale plus the amount of all subsequent taxes held by the county with interest thereon at six per cent (6%) per annum from the date upon which such subsequent taxes became due. No penalty shall, in such cases, be charged either upon the amount for which the land was sold at tax sale nor upon such subsequent taxes. It shall not be required that the 1924 taxes be paid at the time of making such

redemption, but, in order to be entitled to redeem at the low rate speci-
fied herein, such redemption must be made not later than November
first, 1925.   The right of redemption given herein shall apply to all
real estate purchased by the county and still held by it at the time this
act takes effect including cases in which the county may have sold and
assigned its tax lien subsequent to the taking effect of this act."

(2) That under the laws of this state no provision is made for the
rate of interest to be paid in cases where lands are bid in by the county
at a tax sale and that consequently it must be presumed that such cer-
tificates bear interest, only at the legal rate of 6 per cent per annum.

The respondents, on the other hand, contend that the laws of this
state relating to tax sales contemplate that where property is struck
off to the county, the certificates of sale shall bear the maximum rate
of interest provided by law for tax sale certificates; and that chapter
210, Laws 1925, is violative of the Constitution of this state and, hence,
void and of no effect.

Logically, the question first to be determined is whether at the time
of the annual tax sale in December 1921, Emmons county had the right,
in cases where no outside bids were received, to bid in lands then being
offered for sale for delinquent taxes at the maximum rate of interest
provided by law for tax sale certificates?   In our opinion this question
must be answered in the affirmative.

Section 2189, Comp. Laws, 1913, prescribes the duties of the county
auditor relating to notice of delinquent tax sales and provides for the
time and place of holding such sales.

Section 2191, Comp. Laws, 1913, reads as follows:

"Auditor to Sell at Public Vendue.   Said sale shall be made at
public auction at the office of the county auditor or usual place of hold-
ing court in the same building and shall commence at the hour of ten
o'clock in the forenoon, but may be adjourned from day to day for a
period of ten days, whenever it is necessary for the disposal of the
lands advertised.   The lands and lots shall be offered for sale by the
county auditor or his deputy in the order in which they appear in the
advertising list, and each tract or lot shall be offered separately and
*struck off. to the bidder who will pay the total amount of taxes, penal-
ties and costs charged against it, including personal taxes* specified in
the list and in the advertisement, which are a lien upon it, *and who*

*will agree to accept the lowest rate of interest from the date of sale* on the amount of such taxes, penalties and costs so paid by him, *which said rate shall in no case exceed twelve per cent per annum.* But if the sum bid for the same is not paid before the sale closes, such tract or lot shall again be offered for sale in like manner. *The county treasurer shall attend the sale and receive all moneys* paid therein and when any tract of land remains unsold for want of bidders, the same shall again be offered before the sale closes, *and if there is no other bidder he shall bid for the same in the name of the county and the same shall be struck off and become forfeited to the county.* Such tract or lot shall be assessed and taxed like others until the period of redemption expires, *but shall not again be offered for sale for such subsequent taxes unless the county has made an assignment of such certificate of sale,* and if not so assigned, such forfeiture shall become absolute at the expiration of such period of redemption."

Section 2197, Comp. Laws, 1913, relates to the redemption of real property which has been sold for taxes, and so far as material here reads as follows:

"REDEMPTION OF REAL ESTATE. If at said sale any piece or parcel of land shall be sold to a purchaser, the same may be redeemed at any time within three years from the date of sale by any person or corporation having an interest therein *who shall pay into the county treasury for the credit of the person thereto entitled, the amount paid by the purchaser at the time of sale, with a penalty of 5 per cent and interest thereon* at the rate specified in such certificate of sale together with all amounts of subsequent taxes, penalties and interest paid by the holder of such certificate of sale up to the date of redemption with interest at the rate of one per cent per month from the date of payment of such subsequent tax, which date of payment shall not be prior to the day upon which such subsequent tax became delinquent. *In case any piece or parcel of land was not sold for want of bidders, then any person or corporation having an interest therein shall have the same right of redemption from the county, and on the same terms,* as from a purchaser at a tax sale."

Section 2202, Comp. Laws, 1913, provides:

"SALE OF PROPERTY BID IN FOR THE COUNTY. All pieces or parcels of real property bid in for the county under the provisions of this

chapter, and not redeemed or assigned within three years *from the date of the certificate of sale, shall,* upon the giving of the required notice of expiration' of redemption, become the absolute property of the county and may be disposed of by the county auditor at public or private sale, as the county commissioners may direct, subject to such rules and restrictions as they may prescribe."

Section 2203, Comp. Laws, 1913, provides:

"PROPERTY BID IN FOR THE COUNTY; ASSIGNMENT FORM. At any time after any piece or parcel of land shall have been bid in for the county, and before such piece or parcel of land shall become forfeited to the county, and while such tract or parcel of land shall remain unredeemed, the county auditor may assign and convey the same and all the right of the county in such piece or parcel of land acquired at such sale, to any person, (except the county auditor, county treasurer, their deputies and clerks) who shall pay the amount for which the same shall have been bid in, and the amount of all subsequent delinquent taxes, penalties, interest and costs upon the same, and shall execute to such persons a certificate of conveyance for each piece or parcel which may be substantially in the following form. . . ."

These statutes clearly indicate an intention that a county shall not enter into competition with private bidders at a tax sale. No authority is given to the county treasurer to bid upon, or bid in, any tract at a tax sale where there is any other lawful bid therefor. By the express terms of the statute it is only in case "there is no other bidder" for a tract of land offered at a tax sale that the county treasurer is empowered "to bid for the same in the name of the county;" and it is only when that situation exists that the county auditor is authorized to strike the property off to the county. It will be noted that the statutes contemplate not only that the county treasurer shall be present at the tax sale and bid in in the name of the county any and all tracts of land for which there are no private bidders, but also that the transaction shall be consummated by the execution of a certificate of sale to the county as purchaser.

The provision in the statutes requiring the county treasurer to attend a tax sale and bid in tracts of land for which there are no private bidders was not intended for the benefit of the delinquent taxpayer. It was intended, rather, to prevent a delinquent taxpayer for whose

property there was no private bid to obtain an advantage over those for whose property private bids were submitted. That is, the purpose of the provision was to preclude any possibility that any tract of land subject to delinquent taxes might escape being sold to satisfy such taxes. And we are of the opinion that when a county treasurer is required to bid in property at a tax sale for want of private bidders, he may bid upon as favorable terms as a private bidder might bid, and the certificate of sale issued to the county bears the same penalty and the same rate of interest as if the certificate had been issued to a private bidder. While the precise question has never been presented to this court for determination, the conclusion we have reached is in accord with the views expressed by this court in considering somewhat similar provisions in former tax laws of this state. In Emmons County v. Bennett, 9 N. D. 131, 133, 81 N. W. 22, this court said:

"By § 1630 (Comp. Laws, 1887) the county treasurer was authorized to bid off lands at tax sales in the name of the county, in the absence of other bidders. Said section declares that the county acquires 'all the rights, both legal and equitable, that any other purchaser could acquire, by reason of said purchase.' Section 1632 authorized an assignment of the county's certificate to any person who would pay the taxes, penalty, interest, and costs of sale and transfer, and declares that such 'assignment and transfer shall convey unto said purchaser all rights of said county, both legal and equitable, in and to said real estate, as much so as if he had been the original purchaser at said tax sale.' *These provisions do not seem to leave room for doubt that it was the legislative purpose to create an authority in the county to become a purchaser on the same basis as an individual, in the contingency of there being no private bids.*"

As already indicated a county treasurer has no authority to bid in any tract of land in the name of the county at a tax sale, if there is a private bid at the maximum rate of interest provided by the statute. In other words, the county treasurer may not, where there is a private bid at the maximum rate of interest, offer a lower bid at all and thereby prevent the private bid from being accepted. The sole condition which empowers a county treasurer to bid in a tract of land at a tax sale is where there is no lawful bid by a private bidder. In our opinion these statutes manifest an intention that where the county treasurer is re-

quircd to bid in property in the name of the county at a tax sale that the certificate of sale, in case of redemption, shall bear the same penalty and rate of interest as where they are issued to a private bidder, and they further manifest an intention that the bid by the county treasurer shall be at the maximum rate of interest provided by law and that the property shall be struck off to the county at that figure.

The relator lays great stress upon that portion of § 2203, supra, which provides that "at any time after any piece or parcel of land shall have been bid in for the county, and before such piece or parcel of land shall become forfeited to the county, and while such tract or parcel of land shall remain unredeemed, the county auditor may assign and convey the same and all right of the county in such piece or parcel of land acquired at such sale, to any person . . . who shall pay *the amount for which the same shall have been bid in,* and the amount of all subsequent taxes, penalties, interest and costs upon the same. . . ."

It will be noted that the statute provides that "the amount for which the same shall have been bid in, and the amount of all subsequent taxes, penalties, interest and *costs* upon the same," shall be paid. If an assignment of a tax sale certificate is taken from a county during the time provided in § 2203, there can, in no event, be any accrued "costs" on such subsequent taxes. The only costs that could accrue during the period specified in the statute would be on the certificate of sale. The term "costs," contained in the statute, becomes meaningless if applied to subsequent taxes, but has meaning if applied to the tax sale certificate. Hence, we believe that when the provisions of § 2203, supra, are construed in light of cognate statutory provisions, it expresses, rather, a legislative intention that a certificate of tax sale issued to a county shall bear penalty and interest, than an intention to the contrary.

The next question presented for our determination is whether chapter 210, Laws 1925, is violative of the constitution, and, hence, void.

It is elementary that all legislative enactments are presumed to be valid, and that he who assails a law on the ground of unconstitutionality must be able to point out some specific constitutional provision which is infringed by the law.

The defendants here contend that chapter 210, Laws 1925, violates the following provisions of the state Constitution:

Section 69. "The legislative assembly shall not pass local or special laws in any of the following enumerated cases, that is to say: . . .

"23. For the assessment or collection of taxes. . . .

"27. Relinquishing or extinguishing in whole or in part the indebtedness, liability or obligation of any corporation or person in this state, or to any municipal corporation therein. . . .

"29. Exempting property from taxation."

Section 70. "In all other cases where a general law can be made applicable, no special law shall be enacted; nor shall the legislative assembly indirectly enact such special or local law by the partial repeal of a general law; but laws repealing local or special acts may be passed."

Section 20. "No special privileges or immunities shall ever be granted which may not be altered, revoked or repealed by the legislative assembly; nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens."

Section 16. "No . . . law impairing the obligations of contracts shall ever be passed."

These provisions will be considered in the order stated.

We are wholly agreed that chapter 210, supra, does not violate §§ 69 and 70 of the Constitution. Within the purview of these sections, a "special law" is one which relates only to particular persons or things of a class, as distinguished from a "general law," which applies to all things or persons of a class (4 Words & Phrases, 2d series, pp. 635 et seq.; 36 Cyc. 986; 25 R. C. L. p. 813), and a "local law" is one which applies to a specific locality or spot, as distinguished from a law which operates generally throughout the entire state (Gray v. Taylor, 227 U. S. 51, 57 L. ed. 413, 33 Sup. Ct. Rep. 199; 25 R. C. L. p. 814; 3 Words & Phrases, 2d series, p. 168). State v. First State Bank, 52 N. D. 231, 202 N. W. 391.

Chapter 210, supra, is neither special nor local; it is general. It operates equally upon all persons and lands within the scope of the statute. It operates alike on all persons and property similarly situated. The effect of the law is precisely the same upon all lands and all

persons who stand in the same relation to the law. It operates alike in all cases where the facts are substantially the same. It operates in the same manner, and with like effect throughout the entire state. Every tract of land which has been bid in by the several counties in the state for delinquent taxes for 1923 and prior years, where the certificate is held by the county at the time the law takes effect, is within the law, and all persons having a right of redemption are entitled to avail themselves of the remedy afforded thereby.

Is chapter 210, supra, violative of § 20 of the Constitution? We think not. This section inhibits the legislature from granting to any citizen or class of citizens any privileges or immunities which, upon the same terms, are not granted to all citizens. In other words, this section prohibits the legislature from granting to any citizen or class of citizens advantages, or exemptions from the common burdens, which, upon the same terms,—that is, under like circumstances and conditions,—are not granted to all citizens. The object of the constitutional provision is to prevent the legislature from enlarging the rights of some in discrimination against others. But the provision does not inhibit the legislature from making reasonable classification of persons and things for the various purposes of legislation; so long as all are treated alike, under like circumstances, the provision is not violated. 6 R. C. L. p. 406. "If there is a reasonable ground for the classification and the law operates equally on all within the same class it is valid. . . . In determining whether or not a basis of classification is reasonable, it must be looked at from the standpoint of the legislature enacting it, the question of classification being primarily for the legislature. A statute will be sustained where the basis for classification made by it could have seemed reasonable to the legislature, even though such basis seems to the courts to be unreasonable. Legislative discretion in this matter is not subject to review by the courts, except to the extent of determining whether the classification adopted is arbitrary, unreasonable, and unjust. As in all other cases involving the validity of statutes, all reasonable doubts are to be resolved in favor of upholding the validity of legislation establishing a classification; and the legislative judgment as to classification can be overthrown by the courts only when it is clearly erroneous." 12 C. J. pp. 1128–1129.

In enacting chapter 210, supra, the legislature was dealing with the

collection of taxes—taxes which had become delinquent; and which were evidenced by tax certificates held in the names of the various counties of the state. The state itself had a direct interest in each of such tax certificates, as a portion of the amount due thereon represented state taxes. It is well settled that the legislature, in order to induce prompt payment of taxes, may impose a penalty upon taxpayers who fail to pay their taxes when due, without violating guarantees against special privileges and immunities such as those contained in § 20 of the Constitution. 26 R. C. L. p. 385. It seems equally well settled that the legislature may provide by general law for the compromise of delinquent taxes. Cooley Taxn. 4th ed. §§ 1254, 1616.

In State ex rel. Mitchell v. Mayo, 15 N. D. 327, 330, 108 N. W. 36, this court said: "The interest and penalty are imposed not by the several taxing districts, but by the laws of the state. They are not taxes in the strict sense, but are imposed for the purpose of inducing prompt payment of the taxes proper. The disposition of them, therefore, is within the control of the legislature." But, of course, the legislative power must be exercised in conformity with the provisions of the Constitution.

Courts are not concerned with the wisdom of legislation. It is not for us to determine whether chapter 210, supra, is a wise or an unwise enactment. That was a matter solely for the lawmakers to determine. We are concerned alone with the question of legislative power.

It is a matter of common knowledge that at tax sales held in this state there is ordinarily quite active competition on the part of private bidders; and that as a consequence the more desirable and valuable tracts of land are generally bid in by private bidders, and that it is only the less desirable and valuable tracts of land that are bid in by the counties for want of private bids. It must be presumed that, before enacting chapter 210, supra, the legislature informed itself, and determined that in order to bring about payment of the delinquent real estate taxes for 1923 and prior years, it was necessary to grant a reduction in the penalties and interest, on the condition that the taxes be paid on or before November 1st, 1925. And in our opinion the legislature in so doing did not violate the limitations placed upon its power by § 20 of the Constitution.

We are also of the opinion that chapter 210, supra, does not contra-

53 N. Dak.—19.

vene § 16 of the Constitution, which prohibits the legislature from passing any law impairing the obligations of contracts.

It is true, a tax certificate issued to a private bidder at a tax sale is a contract and the rights of the holder of such certificate, as stipulated therein, falls within the constitutional provision against the impairment of contracts. But a tax certificate issued to a county, where a tract of land is bid in in the county's name for want of private bidders, is quite a different transaction from that where a certificate is issued to a private bidder. A private bidder makes a purchase in reliance upon the statutory provisions then existing as to the rights granted to him by such purchase. He pays over the purchase price and receives a certificate which, together with the statutory provisions then existing, specifies certain definite rights in favor of the holder of the certificate. But where a certificate is bid in in the name of a county, such county makes no payment either to the state or to any of the political subdivisions of the proportionate share of the tax due to them out of the tax evidenced by the tax sales certificate. And a county does not become the owner of the tax certificate in the sense that it has parted with anything of value or is entitled to receive the full amount due on the certificate in case of an assignment or redemption thereof. The certificate still represents uncollected taxes, and the purchase in the name of the county is merely one step provided by the legislature in the process of collection. The certificate is bid in and held in the name of the county not by virtue of any voluntary agreement but by virtue of the provisions of law relating to the collection and enforcement of taxes. Unquestionably the legislature, if it had so desired, could have provided that such tax sale certificate should be bid in in the name of the state. The state itself has a direct interest in each tax sale certificate bid in in the name of the county, at least to the extent of that portion due on the certificate which represents state taxes. As between the county, in whose name the certificate is bid in, and the state and the other political subdivisions interested in the tax, the tax certificate so held really represents uncollected taxes, and the proceeds of such tax, when collected by assignment or redemption of the certificates, are distributable among the state, the county and the various political subdivisions in the proportions fixed by law. Chapter 210, supra, merely purports to make a reduction in the interest and penalty

upon uncollected taxes,—those evidenced by certificate of tax sales and those subsequent thereto. There is no contract between the state and the county (within the purview of § 16 of the Constitution) that a county or any of its political subdivisions shall receive the penalties and interest upon delinquent taxes, even though such taxes may have become merged in certificates of sale held in the name of the county. Such penalties and taxes, in our opinion, still remain subject to legislative control.

This disposes of the constitutional objections raised to chapter 210, Laws 1925. It follows from what has been said that this chapter is a valid legislative enactment and must be enforced as such.

The judgment appealed from is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

BIRDZELL, NUESSLE, JOHNSON, and BURKE, JJ., concur.