**STATE of North Dakota, Plaintiff and Appellant,**

v.

**L. S. HANSON, a/k/a Leonard S. Hanson, Defendant and Appellee.**

Crim. No. 584.

Supreme Court of North Dakota.

July 27, 1977.

David L. Peterson, Sp. Asst. Atty. Gen., Bismarck, for plaintiff and appellant State of North Dakota.

Kermit Edward Bye, of Vogel, Vogel, Brantner & Kelly, Fargo, for defendant and appellee.

VOGEL, Justice.

This is an appeal by the State of North Dakota from an order of the district court granting a writ of prohibition. The writ ordered that the State was forever barred from taking any further proceedings against Leonard S. Hanson, the defendant. The court dismissed the complaint. We reverse and remand for further proceedings.

The case arose when Hanson, the Sheriff of Sheridan County, was charged by complaint with committing the crime of reckless endangerment. Because of the public office held by Hanson, the proceedings were transferred to an alternate County Justice and the responsibility for the prosecution was transferred to a Special Assistant At-

torney General. After an amendment to the complaint, the matter was set for trial. Prior to trial, Hanson filed a motion to dismiss the complaint on the ground that North Dakota's reckless-endangerment statute [§ 12.1–17–03, N.D.C.C.] is unconstitutional. At that time, Hanson also asked for a bill of particulars.

The presiding county justice denied both the motion to dismiss and the motion for a bill of particulars. Hanson appealed to district court, and the State moved to dismiss the appeal on the ground that the orders were not appealable. At that time, Hanson did not file a brief in response to the State's motion to dismiss the appeal. A hearing was scheduled. At that hearing the district court advised Hanson that the orders in question were not appealable orders, but indicated to Hanson that he had one week to file a brief in response to the State's motion to dismiss. Hanson then filed a return to the State's motion and also asked for a writ of prohibition.

The State filed a return to the application for the writ, arguing that a writ of prohibition could not be used to test the constitutionality of a statute, and that, in any event, the statute in question was not unconstitutional. The district court issued the writ, holding that it was a proper vehicle to test the constitutionality of the statute, and holding that the reckless-endangerment statute failed to set an ascertainable standard of guilt, in that it was vague, indefinite, and overbroad. The writ also stated that the statute allowed different degrees of punishment for the same acts committed under the same circumstances by persons in similar situations and therefore it violated the Equal Protection Clauses of the United States and North Dakota Constitutions.

The State appealed to this court, and Hanson moved to dismiss the appeal on the ground that an order granting a writ of prohibition and dismissing a complaint is not an order which may be appealed by the State. We held to the contrary in *State v. Hanson,* 252 N.W.2d 872 (N.D.1977), stating that such an order was appealable by the State and, furthermore, that a writ of pro-

hibition is a proper method of attacking the constitutionality of a statute. We denied Hanson's motion to dismiss, and the merits of the appeal are before us now.

The question to be decided on this appeal is whether the reckless-endangerment statute is constitutional. The statute provides:

"A person is guilty of an offense if he creates a substantial risk of serious bodily injury or death to another. The offense is a class C felony if the circumstances manifest his extreme indifference to the value of human life. Otherwise it is a class A misdemeanor. There is risk within the meaning of this section if the potential for harm exists, whether or not a particular person's safety is actually jeopardized." Sec. 12.1–17–03, N.D.C.C.

Although the State is the appellant here, and urges the upholding of the statute, we will approach the issue by analyzing Hanson's contentions.

I

The first theory urged by Hanson is that the phrase "creates a substantial risk of serious bodily injury or death" is vague and general and fails to set forth an ascertainable standard of guilt. He contends that it merely prohibits the doing of an act which might in some way injure another.

■ Before embarking on an analysis of Hanson's contention, we repeat the well-recognized rules of construction summarized in *State v. Hagge*, 211 N.W.2d 395 (N.D.1973). Acts of the Legislature enjoy a presumption of constitutionality, and to rebut that presumption it must be shown that they clearly violate some provision of the State or Federal Constitutions. In addition, statutes are to be construed practically, construing words in their ordinary sense and determining legislative intent from the statute as a whole. If there are two possible constructions to a statute, we choose the one which, without doing violence to the statute, will render it valid. *State v. Hagge, supra*, 211 N.W.2d at 397, and cases cited therein.

Hanson compares the reckless-endangerment statute to the last sentence of the reckless-driving statute in effect at the time of *State v. Hagge*,[1] a statute saved from unconstitutionality by language preceding the last sentence, which better defined the proscribed conduct. Since the reckless-endangerment statute has no such saving language, Hanson asserts that it is unconstitutionally vague.

■ In order that a criminal statute may stand when so attacked, the statute must set forth an ascertainable standard of guilt. The requirements were stated in *State v. Julson*, 202 N.W.2d 145, 152 (N.D.1972), and quoted in *State v. Hagge, supra*, 211 N.W.2d at 397. What is necessary is that ". . . the language, when measured by common understanding and practices, give adequate warning of the conduct proscribed and mark boundaries sufficiently distinct for judges and juries fairly to administer the law."

As Hanson points out, citing *Hagge, supra*, if the reckless-driving statute had merely made unlawful the driving of a vehicle in a manner endangering life, limb, or property, it would have been declared to have failed the test set forth above. However, the statute included a description of the type of conduct, or standard of conduct, required to avoid culpability for reckless driving. The requirement of driving in a careful and prudent manner, with due regard to road and traffic conditions, gave adequate warning of the conduct proscribed and allowed fair administration by judges and juries.

In the instant statute, we have no similar designation of acceptable conduct in the quoted section. However, the standard is

1. "39–09–01. Care required in operating vehicle.—Any person driving a vehicle upon a highway shall drive the same in a careful and prudent manner, having due regard to the traffic, surface, and width of the highway and other conditions then existing, and shall give such warnings as are reasonably necessary for safe operation under the circumstances. No person shall drive any vehicle upon a highway in a manner to endanger the life, limb, or property of any person."

supplied by applicable statutory language found elsewhere in the Criminal Code and in the title to the section.

The reckless-endangerment statute states a culpability only in its title, "Reckless endangerment." No culpability requirement is mentioned anywhere in the body of the statute itself. However, Section 12.1–02–02, subsection 2, N.D.C.C., provides that if a statute does not specify any culpability and does not provide that a person may be guilty without culpability, the culpability that is required is *willfully.* "Willfully" is defined in Section 12.1–02–02, subsection 1–e, as "intentionally, knowingly, or recklessly."

In addition, there is ample authority in North Dakota to support our consideration of the statute's title in determining the required culpability. *Northwestern Bell Telephone Co. v. Hagen,* 234 N.W.2d 841 (N.D.1975); *First State Bank of Cooperstown v. Ihringer,* 217 N.W.2d 857 (N.D. 1974); *In re Estate of Jensen,* 162 N.W.2d 861 (N.D.1968); *In re Berg's Estate,* 72 N.D. 52, 4 N.W.2d 575 (1942); *Olson v. Erickson,* 56 N.D. 468, 217 N.W. 841 (1928).

▇ When we combine the implied culpability provided by Section 12.1–02–02, subsection 2, with our responsibility to consider the title of a statute in clarifying the body and determining legislative intent, we are persuaded that the culpability required for the instant statute is *recklessly.*

If "recklessly" describes the proscribed conduct sufficiently to meet the requirements of *Hagge,* then the reckless-endangerment statute is not unconstitutionally vague. We hold that it meets the constitutional requirements of *Hagge* and that there is no denial of due process.

"Recklessly" is defined in Section 12.1–02–02, subsection 1–c. A person engages in conduct

"c. 'Recklessly' if he engages in the conduct in conscious and clearly unjustifiable disregard of a substantial likelihood of the existence of the relevant facts or risks, such disregard involving a gross deviation from acceptable standards of conduct, except that, as provided in section 12.1–04–02, awareness of the risk is not required where its absence is due to self-induced intoxication."

This language, as commonly understood, does give adequate warning of the conduct proscribed. If a person engages in conduct whereby he consciously and unjustifiably disregards a substantial risk that his conduct will result in death or serious bodily injury, then he has engaged in conduct proscribed by the reckless-endangerment statute. The language is sufficiently explicit to enable a person to determine what conduct renders him liable under the statute.

We believe that the boundaries of the proscribed conduct are sufficiently distinct for judges and juries to fairly administer the law. The process by which a judge or a jury determines whether there has been a gross deviation from acceptable standards of conduct (the "recklessly" test) is analogous to the process by which one determines whether there has been a deviation from the standard of reasonable care, a much-used legal test. The degree of deviation is different, in that "reckless" requires a gross deviation. The circumstances involved are different, in that "recklessness" requires an act done in conscious and unjustifiable disregard of the risks. However, the process of determining whether a deviation from the standard occurred is the same.

We hold that the reckless-endangerment statute meets the constitutional requirements set forth in *State v. Hagge, supra.* When the culpability of "recklessly" is implied, the definition of that culpability combined with the statutory requirement that the created risk be of serious bodily injury or death provides an ascertainable standard of guilt and satisfies the requirements of due process of law.

▇ Hanson also argues that the statute is unconstitutionally vague because the language "whether or not a particular person's safety is actually jeopardized" results in a definition of "risk" which is incomprehensible and absurd. He reasons that there cannot be a risk if no particular person is endangered.

We believe, however, that the meaning of the language is apparent. It is designed to apply to situations where a group of persons, not individually identified, is endangered, as by driving upon a crowded sidewalk. In that situation, the State need not prove that any one "particular person" on the sidewalk was endangered. It is sufficient if the State proves that one or more persons in the group were endangered.

## II

■ Next, we turn to Hanson's contention that the reckless-endangerment statute denies equal protection of the laws, in that there is no distinction in the statute between conduct amounting to a felony and that amounting to a misdemeanor. He argues that since the culpability required for the misdemeanor violation is the same as that required for the felony violation, there is no rational basis for the distinction in offenses.

The operative grading language in the statute is the phrase "the circumstances manifest his extreme indifference to the value of human life." Hanson reasons that since similar language, "indifference to consequences," has been associated by case law to "gross negligence" [*Holcomb v. Striebel,* 133 N.W.2d 435, 438 (N.D.1965)], and since "gross negligence" is similar to "criminal negligence," then the language "extreme indifference" must imply a higher degree of culpability than criminal negligence. This higher degree is *recklessly,* and thus "recklessly" is the culpability required for a felony conviction under the statute.

Hanson goes on to argue that since no culpability is stated in the statute, Section 12.1–02–02, subsection 2, N.D.C.C., provides that the culpability required is *willfully.* "Willfully" is defined in subsection 1 as "intentionally, knowingly, or recklessly." Hanson asserts that since the lowest of these is "recklessly," that must be the culpability required for the misdemeanor conviction.

We agree with Hanson, although for different reasons, that "recklessly" is the culpability required for both the misdemeanor and felony convictions. We do not agree that this effects an unconstitutional denial of equal protection of the laws. On the contrary, we believe that the fact that the culpabilities are the same is irrelevant and that the operative grading language provides a rational basis for distinguishing the greater from the lesser crime.

■ The basic statement of what is required by our State and Federal Constitutions to ensure equal protection of the laws was enunciated by this court in *In re Estate of Jensen, supra,* Syllabus ¶ 7, 162 N.W.2d at 863:

"Sections 11 and 20 of the North Dakota Constitution and § 1 of the fourteenth amendment to the United States Constitution do not prohibit or prevent classification, provided such classification is reasonable for the purpose of legislation, is based on proper and justifiable distinctions considering the purpose of the law, is not clearly arbitrary, and is not a subterfuge to shield one class or to burden another or to oppress unlawfully in its administration."

Equal protection requires a rational relationship between the classification and the purpose of the statute. If the classification is arbitrary, unreasonable, or unwarranted, it may offend constitutional standards.

When this requirement is applied to the area of criminal-offense classification, it is generally said that if a statute prescribes different degrees of punishment for the same acts committed under like circumstances by persons in like situations, then the statute violates the equal-protection guarantee. *People v. Calvaresi,* Colo., 534 P.2d 316, 318 (1975). In the instant case, Hanson urges, and the district court held, that the reckless-endangerment statute failed this test of constitutionality. We disagree. We hold that Section 12.1–17–03, N.D.C.C., does not deny equal protection by means of its offense classification.

The controlling element is not that "recklessly" is the culpability required for both the misdemeanor and the felony violations. As pointed out above, the fact that the

culpabilities are the same is not conclusive. North Dakota's Criminal Code provides many examples of offenses requiring the same culpabilities, but grading the degree of penalty on some other basis.[2]

The statutory language which must pass the test of constitutionality is "if the circumstances manifest his extreme indifference to the value of human life." If the circumstances so manifest, then the offense is a Class C felony. Otherwise, it is a misdemeanor. The question, then, is whether there is a difference between recklessly risking serious injury or death, and doing so under circumstances manifesting extreme indifference to human life. If there is such a difference, is it rationally related to the purpose of the law? We believe there is a distinction between the two risks just mentioned, and that classifying one as a Class C felony and one as a misdemeanor is a rational method of achieving a permissible legislative objective.

The purpose of the reckless-endangerment statute is to protect society from the reckless *risk* of serious bodily injury or death. As pointed out in *Working Papers of the National Commission on Reform of Federal Criminal Laws,* Vol. II, p. 836, an unsuccessful effort to cause serious injury or death is proscribed by our *attempt* laws. What the reckless-endangerment statute does is protect against the *risk* of such injury or death. It is the *risk* that is to be avoided.

The statute is graded, then, according to the severity of the risk created. If a person engages in conduct which creates a substantial risk of serious bodily injury or death, and consciously and unjustifiably disregards that risk, and if he does so under particular circumstances, then he commits a Class C felony. If he does so under other circumstances, then he commits a misdemeanor. The circumstances that bring an act within the scope of the felony violation are those manifesting the actor's extreme indifference to the value of human life. Any other circumstances may bring the act within the scope of the misdemeanor violation.

We cannot say that the circumstances employed in the grading of the statute are arbitrary, unreasonable, or unwarranted. We believe that the grading phrase "extreme indifference to the value of human life" is an understandable and distinct definition of what circumstances are necessary to bring the act within the felony offense. As such, it is a reasonable and rational method of distinguishing the greater crime from the lesser crime.

We hold that the instant statute does not prescribe different degrees of punishment for the same acts committed under *like* circumstances by persons in like situations. It prescribes different degrees of punishment for the reckless creation of the risk under *different* circumstances, and, as such, the statute does not deny equal protection of the laws.

### CONCLUSION

1. The reckless-endangerment statute, Section 12.1–17–03, N.D.C.C., sets forth an ascertainable standard of guilt, and therefore does not operate as a denial of due process of law.

2. The reckless-endangerment statute, Section 12.1–17–03, N.D.C.C., provides a reasonable and rational distinction between conduct that amounts to a felony and that which amounts to a misdemeanor, and therefore does not operate as a denial of equal protection of the laws.

The writ of prohibition is quashed, the complaint is reinstated, and the case is remanded for further proceedings consistent with this opinion.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.

---

2. For examples, see Sec. 12.1–16–01, subsec. 1, intentional homicide, a Class A felony, and Sec. 12.1–16–02, subsec. 2, intentional homicide under extreme emotional disturbance, a Class B felony; Sec. 12.1–20–03, gross sexual imposition, as both Class A and Class B felonies; Sec. 12.1–22–01, robbery, classified according to weapons used, force, injury, and presence of an accomplice; and Sec. 12.1–23–05, theft, graded according to amount, threats, and the infliction of injury.