STATE of North Dakota, Plaintiff and Appellee,

v.

Harold R. KNOEFLER, Defendant and Appellant.

Cr. No. 671.

Supreme Court of North Dakota.

May 24, 1979.

Rehearing Denied June 8, 1979.

William S. Murray, Bismarck, for defendant and appellant.

Sherrilynn Sperling Smith, Sp. Asst. Atty. Gen., Bismarck, for plaintiff and appellee.

SAND, Justice.

Harold R. Knoefler, defendant, in his appeal from a district court judgment of conviction, challenged the constitutionality of § 4 12 03.1, North Dakota Century Code, and the regulations promulgated thereunder. The regulations were not separately challenged and will rest or fall with the statute.

Knoefler was charged, tried, and convicted in Bottineau County Court of violating §§ 4 12 03.1,[1] 4 12 21, and 4–12–22,

---

1. Section 4–12–03.1, NDCC, provides as follows:

*Establishment of locations—Exception—Location rights.*—No new commercial location may be established within two miles of another commercial location. No commercial operator may establish an apiary within two miles of another commercial operator. The noncommercial beekeeper with one to twenty-four colonies will have territorial rights on one location. If any seed grower requests the commissioner of agriculture to include additional loca-

NDCC. Knoefler appealed the county court conviction to the district court of Bottineau County and demanded a trial de novo. Pursuant to a stipulation, the District Court of Bottineau County ordered a change of venue to the district court of the Fourth Judicial District, County of Burleigh. The Burleigh County District Court found Knoefler guilty of violating §§ 4–12–03.1, 4–12–21, and 4–12–22, NDCC, and fined him $100 for each violation, for a total fine of $300. The defendant challenged the constitutionality of § 4–12–03.1, NDCC, in both the county court and the district court. Knoefler appealed the judgment of conviction to this court.

No issue was raised as to the sufficiency of the evidence.

Defendant, in his brief, made reference to the files and records previously submitted to this court on a prior appeal in a companion case[2] wherein he contended, as he does here, that § 4–12–03.1, NDCC, and its regulations, which prohibit a commercial beekeeper from establishing an apiary within two miles of another commercial operator, violate §§ 20, 69 and 11 of the North Dakota Constitution as well as the fourteenth amendment to the United States Constitution. Knoefler contended that § 4–12–03.1 creates an unconstitutional classification between new and established beekeepers for the sole purpose of inhibiting competition.

As pertinent to this issue, § 20 of the North Dakota Constitution, in part, provides as follows:

" . . . nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens."

■ The record indicates Knoefler is not a resident or citizen of North Dakota but rather resides in Nebraska, or possibly California. In *Benson v. Schneider*, 68 N.W.2d 665 (N.D.1955), this court said that a person who is not a citizen of this state may not invoke the provisions of § 20, Article I, of the North Dakota Constitution. Knoefler has not illustrated in any manner whatsoever, nor has he established facts giving rise to a presumption, that he is a resident or citizen of this state; consequently he is not in a position to invoke the provisions of § 20 of the North Dakota Constitution.

Even if Knoefler had established standing to challenge the constitutionality under § 20, N.D.Const., this court, in *Dunn v. North Dakota Workmen's Compensation Bureau*, 191 N.W.2d 181 (N.D.1971), took cognizance that § 20 does not prohibit appropriate legislative classification where proper facts justify such a classification and the act applies uniformly to all within a class under similar circumstances. The court had under consideration a statutory provision which exempted partners from the Workmen's Compensation Act but at the same time provided executive officers who performed duties similar to those of an employee were not exempt. The court concluded this was not an unconstitutional or invalid classification.

Section 69 of the North Dakota Constitution, as pertinent to the issue here, provides "The legislative assembly shall not pass local or special laws in any of the following

---

tions for the purpose of pollinating his crop, the restriction prohibiting the maintaining of locations within two miles of one another shall not apply. The name and address of each apiary shall be displayed at each location. The property owner will be exempt from this section. Definitions are found in § 4–12–01, NDCC, and are as follows:

*Definitions.*—In this chapter, unless the context or subject matter otherwise requires:

1. "Beekeeper" shall mean any person, firm, association, or corporation owning, possessing, or controlling one or more colonies of bees for the production of honey, beeswax, or byproducts either for personal or commercial use.

2. "Apiary" shall mean any place where one or more hives or colonies of bees are kept.

3. "Person" and "owner" shall mean natural persons, firms, associations, or corporations.

6. "Commercial locations" shall mean apiaries where twenty-five or more hives or colonies of bees are kept.

7. "Commercial operator" shall mean any beekeeper who maintains two hundred and fifty or more hives or colonies of bees.

2. *Knoefler Honey Farms v. Just*, 270 N.W.2d 354 (N.D.1978).

enumerated cases" and then sets out the 35 subjects covered.

In *State v. Lawler*, 53 N.D. 278, 205 N.W. 880 (1925), and in *State v. First State Bank of Jud*, 52 N.D. 231, 202 N.W. 391 (1924), this court defined a special law as one relating only to particular persons or things of a class, as distinguished from a general law which applies to all things or persons of a class, and a local law as one which applies to a specific locality or spot, as distinguished from a law which operates generally throughout the entire state.

■ Section 4–12–03.1, NDCC, is neither a special nor a local law—it is general. It operates equally upon all commercial beekeepers and on all lands within the scope of the statute. It operates alike on all persons and property similarly situated. There is no difference in the law from one locale to another. It operates alike in all cases where the facts are substantially the same and it operates in the same manner with the same effect throughout the entire state. It necessarily follows that it does not violate § 69 of the North Dakota Constitution.

■ The principles of law applying to § 11, N.D.Const., which states that "All laws of a general nature shall have a uniform operation." are not dissimilar from those principles applying to the fourteenth amendment to the United States Constitution, and therefore we will consider them together.

In *Herman v. Magnuson*, 277 N.W.2d 445 (N.D.1979), we quoted approvingly from *Arneson v. Olson*, 270 N.W.2d 125 (N.D. 1978), wherein we set up three standards of scrutiny, and stated:

"In *Johnson v. Hassett, supra* [217 N.W.2d 771 (N.D.1974)], we referred to the three standards of scrutiny of equal-protection questions for a judicial adjudication of constitutionality which appeared to have evolved in the Federal courts. One is the traditional reasonable or rational-basis standard under which a statute will be upheld if its classifications are not patently arbitrary and bear a reasonable relationship to a legitimate government interest. However, if the case involves an 'inherently suspect classification' or a 'fundamental interest,' it is 'subjected to strict judicial scrutiny.' A third, less clearly defined, category requires a 'close correspondence between statutory classification and legislative goals.' In *Johnson v. Hassett, supra*, we said that this latter test closely approximates the substantive due-process test historically used by this and other State courts." 270 N.W.2d at 132–133.

The difficulty, however, remains in determining which standard applies.

From our research, it appears that neither the United States Supreme Court,[3] nor any Federal or State court has defined what constitutes an inherently suspect classification. Under these circumstances we do not believe it necessary or appropriate to formulate a definition. The United States Supreme Court, however, has treated classifications based upon race, alienage, or national origin as inherently suspect, and a plurality, in *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), included sex as being a suspect classification and thus subject to strict judicial scrutiny. See also *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). As to alienage, see *Nyquist v. Mauclet*, 432 U.S. 1, 97 S.Ct. 2120, 53 L.Ed.2d 63 (1977). As to race, see *McLaughlin v. State of Florida*, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). As to illegitimacy, see *Mathews v. Lucas*, 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976); but *Lalli v. Lalli*, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978), should also be considered.

---

**3.** In *San Antonio School Dist. v. Rodriquez*, 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16, *rehearing denied* 411 U.S. 959, 93 S.Ct. 1919, 36 L.Ed.2d 418 (1973), the Court identified a "suspect class" entitled to the protections of strict judicial scrutiny as one "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process."

Based upon the foregoing decisions, we do not believe that § 4–12–03.1, NDCC, "involves an 'inherently suspect classification' or a 'fundamental interest,'" and therefore is not subject to strict judicial scrutiny.

Beekeeping has been recognized by this court as a commercial enterprise or activity. *Morel v. Thompson*, 225 N.W.2d 584 (N.D. 1975). Thus statutes creating classifications within the beekeeping industry, if indeed such classifications are created by § 4–12–03.1, NDCC, are governed by the constitutional concepts that apply to business or commercial classifications.

The United States Supreme Court in *Lincoln Federal Union v. Northwestern Iron & Metal Co.*, 355 U.S. 525, 69 S.Ct. 251, 93 L.Ed. 212, 6 A.L.R.2d 473 (1949), after reviewing *Nebbia v. People of State of New York*, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469 (1934); *Adair v. United States*, 208 U.S. 161, 28 S.Ct. 277, 52 L.Ed. 436 (1908); and *Coppage v. State of Kansas*, 236 U.S. 1, 35 S.Ct. 240, 59 L.Ed. 441 (1915), said:

> "This Court beginning at least as early as 1934, when the *Nebbia* case was decided, has steadily rejected the due process philosophy enunciated in the *Adair-Coppage* line of cases. In doing so it has consciously returned closer and closer to the earlier constitutional principle that the states have power to legislate against what are found to be injurious practices in their internal commercial and business affairs, so long as their laws do not run afoul of some specific federal constitutional prohibition, or of some valid federal law. [Citations omitted.] Under this constitutional doctrine the due process clause is no longer to be so broadly construed that the Congress and the State legislatures are put in a straitjacket when they attempt to suppress business and industrial conditions which they regard as offensive to the public welfare." 355 U.S. at 536–537, 59 S.Ct. at 257.

The foregoing statement was reaffirmed by the United States Supreme Court in *North Dakota State Board of Pharmacy v. Snyder's Drug Stores, Inc.*, 414 U.S. 156, 94 S.Ct. 407, 38 L.Ed.2d 379 (1973), and is of significance because in *Snyder* the United States Supreme Court reversed its earlier holding in *Liggett Co. v. Baldridge*, 278 U.S. 105, 49 S.Ct. 57, 73 L.Ed. 204 (1928), which declared unconstitutional a Pennsylvania statute similar to the North Dakota statute, § 43–15–35, relating to pharmacy ownership by registered pharmacists as a prerequisite to being licensed. The United States Supreme Court in *Snyder* stated that the *Liggett* case was decided on grounds of substantive due process and was a derelict in the stream of law. The *Liggett* case was decided in 1928 and the *Snyder* case was decided in 1973.

It is now settled that states have power to legislate against what are found to be injurious practices in their internal commercial and business affairs as long as their laws do not run afoul of some specific federal constitutional prohibition or some valid federal law. In determining the constitutionality of statutes regulating commercial affairs under the Equal Protection Clause, courts have required only a rational relationship between the classification and the purpose of the statute. Our court has followed this approach in reviewing equal protection challenges to such statutes. In *State v. Hanson*, 256 N.W.2d 364 (N.D. 1977), we quoted approvingly from *In re Estate of Jensen*, 162 N.W.2d 861, 863 (N.D. 1968):

> "Sections 11 and 20 of the North Dakota Constitution and § 1 of the fourteenth amendment to the United States Constitution do not prohibit or prevent classification, provided such classification is reasonable for the purpose of legislation, is based on proper and justifiable distinctions considering the purpose of the law, is not clearly arbitrary, and is not a subterfuge to shield one class or to burden another or to oppress unlawfully in its administration."

The court in *Hanson* continued by saying:

> "Equal protection requires a rational relationship between the classification and the purpose of the statute. If the classi-

fication is arbitrary, unreasonable, or unwarranted, it may offend constitutional standards." 256 N.W.2d at 368.

This case also stands for the proposition that the burden is on the challenger to prove that the statute is clearly unreasonable. *State v. Hanson, supra* at 366.

■ In reviewing the relationship between the commercial classification and the purpose of the statute, it is not necessary that the purpose of the statute be readily ascertainable upon its face. In *United States v. Carolene Products Co.*, 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938), the United States Supreme Court in April of 1938 had under consideration the constitutionality of the Filled Milk Act of Congress. The court, through Justice Stone, said:

"Even in the absence of such aids [legislative findings], the existence of facts supporting the legislative judgment is to be presumed, for regulatory legislation affecting ordinary commercial transactions is not to be pronounced unconstitutional unless in the light of the facts made known or generally assumed it is of such a character as to preclude the assumption that it rests upon some rational basis within the knowledge and experience of the legislators." [Footnote omitted.] 304 U.S. at 152, 58 S.Ct. at 783.

Later in the same opinion he said:

" . . . the constitutionality of a statute, valid on its face, may be assailed by proof of facts tending to show that the statute as applied to a particular article is without support in reason because the article, although within the prohibited class, is so different from others of the class as to be without the reason for the prohibition . . . by their very nature such inquiries, where the legislative judgment is drawn in question, must be restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for it."

In *Signal Oil and Gas Company v. Williams County*, 206 N.W.2d 75 (N.D.1973), this court stated at page 83:

"It is also well established that a classification although discriminatory is not ar-

bitrary nor violative of the Equal Protection Clause of the Fourteenth Amendment if any state of facts reasonably can be conceived that would sustain it. [Citations omitted.] Furthermore, a court need not know the special reasons, motives, or policies of a State legislature in adopting a particular classification, so long as the policy is one within the power of the legislature to pursue, and so long as the classification bears a reasonable relation to those reasons, motives, or policies."

See also, *Tharaldson v. Unsatisfied Judgment Fund*, 225 N.W.2d 39, 46 (N.D.1974); *Snyder's Drug Stores, Inc. v. North Dakota State Board of Pharmacy*, 219 N.W.2d 140, 148 (N.D.1974).

■ Section 4–12–03.1, NDCC, was enacted by Chapter 76 (Senate Bill 208) of the 1967 Session Laws. It was introduced by Senators Wenstrom and Morgan. Historical background and extrinsic aids, i. e., legislative committee reports, may be resorted to in determining legislative intent where the language of the statute is ambiguous. *State v. Jelliff*, 251 N.W.2d 1 (N.D.1977); *Hoellinger v. Molzhon*, 77 N.D. 108, 41 N.W.2d 217 (1950). Similarly, in the absence of a legislative finding we believe such resort is appropriate to determine the evils and objectives at which the legislation was aimed as distinguished from the meaning of the statute. See *State ex rel. Syvertson v. Jones*, 74 N.D. 465, 23 N.W.2d 54 (N.D.1946), concurring opinion.

Both the Senate Agriculture Committee minutes and the House Agriculture Committee minutes state that the law proposes to protect the North Dakota bee business. There was testimony before the Committees stating that "People from neighboring states move in, harvest their crop and go back to their home state because there are no fees charged or any spacing law." This law was passed with the emergency provision and became effective 28 February 1967. The initial spacing requirement was three miles, however the act was amended by Chapter 84 (Senate Bill 462) of the 1969 Session Laws changing the spacing requirement to two miles. The House Agriculture

Committee minutes contain a brief historical background. The minutes state:

"Our registration laws have been primarily necessary for control of bee diseases. Prior to the late 1940's registration and inspection were the only means of bee disease control. As such they fulfilled their design as well as could be expected."

The minutes also reflect the answer given by a proponent of the bill to the following question:

"Q. If bees get too close together what will happen?

"A. They will rob each others colony." The testimony at the hearing and the county justice's memorandum decision state that the purpose of the restriction is to control disease and to prevent raiding.

From the minutes of the House Agriculture Committee pertaining to the legislation in question, we can fairly assume that one of the primary purposes of the section was to prevent one colony of bees from pirating other colonies and to prevent the spreading of diseases. This in itself constitutes sufficient reason to sustain the validity of the act.

Knoefler also asserted that § 4‑12 03.1, NDCC, violates the Equal Protection Clause because the statute allows an exception to the spacing requirement at the request of a seed grower. He argued that such an exception, when considered with the fact that beekeepers often place their own colonies less than two miles from their other existing colonies and that bee diseases can be controlled by antibiotics, demonstrates the purpose of the statute is for the economic protection of established beekeepers rather than the prevention of disease.

■■ An exception per se is not grounds for declaring a statute invalid or unconstitutional. Merely because there are exceptions to the two-mile spacing requirement does not make the section unconstitutional.

The United States Supreme Court in *Hughes v. Alexandria Scrap Corporation*, 426 U.S. 794, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976), had under consideration Maryland's junk automobile statute under which it paid a bounty to scrap processors for the destruction of any vehicle formerly titled in Maryland upon proof of ownership, etc. In upholding the statute, the court, at 426 U.S. 813, 96 S.Ct. at 2499‑2500, said:

"It is well established, however, that a statutory classification impinging upon no fundamental interest, and especially one dealing only with economic matters, need not be drawn so as to fit with precision the legitimate purposes animating it. *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955).

.    .    .    .    .

"Few would contend that Maryland has taken the straightest road to its goal, either in its original drafting of the statute or in the refinement introduced by the 1974 amendment. But in the area in which this bounty scheme operates the Equal Protection Clause does not demand a surveyor's precision. The 1974 amendment bears a rational relationship to Maryland's purpose of using its limited funds to clean up its own environment, and that is all the Constitution requires. [Citations omitted.]"

In *State v. Hanson*, 256 N.W.2d 364 (N.D. 1977), we had under consideration the reckless endangerment statute in a criminal case. We said:

"Acts of the Legislature enjoy a presumption of constitutionality, and to rebut that presumption it must be shown that they clearly violate some provision of the State or Federal Constitutions." 256 N.W.2d at 366.

In *City of Bismarck v. Materi*, 177 N.W.2d 530 (N.D.1970), this court had under consideration the sabbath-breaking ordinance of the city of Bismarck. In upholding the validity of the ordinance the court said at page 539:

"Neither the Due Process Clause nor the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution demands logical tidiness. No finicky or exact conformity to abstract correlation is required of legislation. The Constitution is satisfied if a legislature responds to the practical living facts with which it deals. Through what

precise points in a field of many competing pressures a legislature might most suitably have drawn its lines is not a question for judicial re-examination. It is enough to satisfy the Constitution that in drawing them the principle of reason has not been disregarded, and what degree of uniformity reason demands of a statute is a function of the complexity of the needs which the statute seeks to accommodate.

.    .    .    .    .

"A statute is not to be struck down on the supposition that various differently treated situations may in fact be the same."

See also, *McGowan v. State of Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1960).

In *Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93, 95 A.L.R.2d 1347 (1963), the United States Supreme Court had under consideration the validity of a statute which made it a misdemeanor to engage in the business of debt adjusting except as an incident to the lawful practice of law. The court held the statute did not violate the due process clause, nor by excepting lawyers did it deny equal protection of the law to non-lawyers. The Court observed that legislative bodies have broad scope to experiment with economic problems and that the Court does not sit to " 'subject the state to an intolerable supervision hostile to the basic principles of our government and wholly beyond the protection which the general clause of the Fourteenth Amendment was intended to secure.' "

We conclude that any classification created by § 4–12–.03.1, NDCC, is based upon commercial activity and as such need only bear a rational relationship to the purpose of the statute. The spacing requirements of § 4–12–03.1 are rationally related to statutory goals of preventing honey raiding and the spreading of bee diseases. On the basis of the challenge made and the facts presented in support of the challenge, the statute is valid.

The district court's judgment of conviction is affirmed.

ERICKSTAD, C. J., PAULSON, and PEDERSON, JJ., and LARRY M. HATCH, District Judge, concur.

HATCH, District Judge, sitting in place of VANDE WALLE, J., disqualified.